■ ALEXANDER SHAPIRO, Appellant, v GLENS FALLS INSURANCE COMPANY, Respondent.—In an action *inter alia* to declare that, under a policy of personal liability insurance issued by defendant to plaintiff, defendant is obligated to defend plaintiff in a certain slander action, plaintiff appeals from a judgment of the Supreme Court, Kings County, dated April 29, 1974, which, after a nonjury trial, declared (1) that the policy did not entitle plaintiff to coverage or defense by defendant in the slander action and (2) that defendant properly refused to provide coverage to plaintiff with respect to that action. Judgment affirmed, with costs. In 1972, plaintiff allegedly uttered slanderous statements directed against the general partners of a real estate syndicate in which he was a limited partner. Those statements form the basis of a suit in slander commenced against plaintiff by the general partners. Plaintiff claims there is coverage for those claims under the personal excess liability policy here in question. However, coverage for liability as a result of the alleged statements is excluded by virtue of the express terms of the "business pursuits" exclusion contained in the policy, which provide: "This policy does not apply * * * to personal injury * * * arising out of * * * any business pursuits * * * of the insured". Plaintiff, as a limited partner of long standing in this real estate syndicate, was primarily concerned with realization of profits from his investment. Under these circumstances, the test of "business pursuits" set forth in *Home Ins. Co. v Aurigemma* (45 Misc 2d 875), i.e., a customary engagement or continued activity for the purpose of profit, is satisfied (cf. *Levinson v Aetna Cas. & Sur. Co.,* 64 Misc 2d 979, 981; *Fadden v Cambridge Mut. Fire Ins. Co.,* 51 Misc 2d 858, 862, affd 27 AD2d 487). Plaintiff's primary means of livelihood consisted of activities other than his investment in this real estate syndicate. However, for purposes of the "business pursuits" exclusion, the "business" engaged in by him need not necessarily be limited to his *sole* occupation or employment (cf. *Matter of Steinbeck v Gerosa,* 4 NY2d 302, 308). By the very nature of partnership, plaintiff, as a limited partner, was more clearly engaged in a "business pursuit" than is, for example, a corporate stockholder. Cohalan, Acting P. J., Christ, Brennan and Munder, JJ., concur; Shapiro, J., dissents and votes to reverse the judgment and to declare that defendant is obligated under the terms of the policy of insurance to defend plaintiff, indemnify him and reimburse him for expenses already incurred in connection with the slander action, with the following memorandum: In this declaratory judgment action Special Term has determined that the plaintiff insured is not entitled to coverage under an "umbrella" policy of personal liability insurance issued by the defendant insurer, Glens Falls Insurance Company. I respectfully dissent from this court's affirmance of the judgment and vote to award judgment in plaintiff's favor. QUESTIONS INVOLVED 1. Is the "business pursuits" exclusion in defendant's policy, as therein defined, applicable to the facts of the case? Special Term answered "Yes". I disagree. 2. Is the "intentional injury" exclusion of the policy applicable to the claim made against plaintiff in the slander

action? Special Term answered "Yes". I disagree. 3. Does the policy considered as a whole exclude coverage of that cause of action? Special Term answered "Yes". I disagree. THE FACTS Defendant's personal excess liability policy insured plaintiff for a three-year term commencing April 19, 1970. Plaintiff is the president of a plumbing supply company to which enterprise he devotes most of his full working time. During the past 15 years he has made numerous financial investments which have produced dividends of over $40,000 annually. Among these investments, plaintiff in 1961 paid $10,000 for a limited partnership interest in the Irving Place Realty Company, a real estate syndicate. By the terms of the partnership agreement, plaintiff, as a limited partner, had no control over the conduct of the partnership business and had no authority to act for or bind the partnership. His participation was limited to receiving his share of the profits, if there were any. In 1967 the general partners proposed a sale of the sole parcel of real property owned by the partnership and a subsequent winding up of the partnership affairs. Plaintiff disapproved the terms of the proposed sale and dissolution, and some four years later, with the matter still unresolved, he wrote, signed and mailed a form letter to the other limited partners, inviting them to join him in an arbitration proceeding against the general partners. Shortly thereafter, in June, 1972, the general partners commenced a slander action against plaintiff, seeking damages in the amount of $500,000, in which they alleged that in oral communications with one of the limited partners plaintiff willfully and maliciously accused the general partners of "flim flamming, cheating and stealing", of being "thieves", of "phoneying and doctoring" the books and records of the partnership and of "getting away with murder" in connection with their conduct of the partnership business. Plaintiff forwarded the summons and complaint in that action to defendant, with a request that it represent and defend him in the suit, as required by the policy of insurance. By letter dated August 3, 1972, written on behalf of defendant, coverage was disclaimed for the reason that the policy excluded coverage for "personal injury * * * arising out of * * * any business pursuits."[1] Following the disclaimer, plaintiff instituted the present action. The insurer's answer, in addition to asserting the "business pursuits" exclusion, set forth a further affirmative defense that coverage was barred by an amendatory endorsement to the policy which by its terms excluded coverage for personal injury caused "intentionally" by the insured. The applicable policy provisions follow: "Section 2 * * * 2.2 [Defendant] will indemnify the Insured * * * for all sums which the *Insured* shall become legally obligated to pay as damages, because of *personal injury* * * * caused by such an occurrence * * *. Section 5 * * * When used in this policy or in any endorsement forming a part hereof: * * * 5.3 *'business'* includes a trade, profession or occupation; * * * 5.9 *'personal injury'* means: * * * (c) libel, slander, defamation of character or reputation, invasion of rights of privacy, humiliation or mental anguish; or * * * Section 6 * * * This policy does not apply: * * * 6.6 to *personal injury* or *property damage* arising out of: (a) any *business* pursuits * * * of the *Insured.* [Endorsement] 1. With respect to Sections 5.9 and 5.10 defining 'personal injury' and 'property damage', such insurance as is afforded by the policy does not apply: * * * (b) to any *personal injury* or *property damage* caused intentionally by or at the direction of the *Insured."* (Emphasis in original.) Special Term awarded declaratory relief in favor of

---

1. The disclaimer was reiterated, on the same ground, on September 18, 1972 and again on January 4, 1973.

defendant, finding that both the "business pursuits" exclusion (policy, § 6.6) and the endorsement language (§ 1, subd. [b]) barred policy coverage. THE LAW I. THE "BUSINESS PURSUITS" EXCLUSION In my opinion, Special Term went astray on both grounds relied on by it in upholding defendant's affirmative defenses. "Business" is defined in the policy to include "a trade, profession or occupation". It seems clear to me that plaintiff engaged in no "trade, profession or occupation" in the accepted sense of those terms in making an investment as a limited partner in the Irving Place Realty syndicate. His occupation was that of proprietor of a plumbing supply business. In the absence of a policy definition of the term "business pursuits", that term should not be construed so broadly as to bring within its ambit financial investments involving no expenditure of time or labor on an insured's part and which imposed on plaintiff no duties or obligations directly connected with the day-to-day conduct of the investment enterprise. To construe "business pursuits" as Special Term did and as this court is now sanctioning would mean, for example, that a doctor or an engineer or a judge who invested in a limited partnership under an agreement such as the one in this case, which provides "THE LIMITED PARTNERS shall take no part in the conduct or control of the PARTNERSHIP business * * * and shall have no right or authority to act for or bind the PARTNERSHIP", was nonetheless engaged in that enterprise as a business pursuit. The term "business pursuits" has been defined as encompassing two major elements—continuity, in the sense of *customary* engagement or stated *occupation,* and profit motive, in the sense of activity providing a means of livelihood or gainful employment *(Home Ins. Co. v Aurigemma,* 45 Misc 2d 875; *Fadden v Cambridge Mut. Fire Ins. Co.,* 51 Misc 2d 858, affd 27 AD2d 487). In another context, it has been declared that the term "business" need not refer to one's sole occupation and employment *(Matter of Steinbeck v Gerosa,* 4 NY2d 302, 308) and at least one State includes within the scope of the "business pursuits" exclusion contained in liability policies every activity in which profit is a motive *(Salerno v Western Cas. & Sur. Co.,* 336 F2d 14, 19, applying Missouri law; *Lane v Hartford Fire Ins. Co.,* 343 F Supp 79, 86–87). Nonetheless, it seems highly unrealistic to characterize plaintiff's $10,000 investment in Irving Place Realty as a "business pursuit". Carried to its logical end, the insurer's argument that such appellation is appropriate in this case would require its application, for example, to the owner of just one share of stock in a public corporation or the purchaser of a corporate bond. The absurdity of such a result is obvious. The assertion of the majority that "By the very nature of partnership, plaintiff, as a limited partner, was more clearly engaged in a 'business pursuit' than is, for example, a corporate stockholder" simply does not square with the facts. If anything, plaintiff, as a limited partner, had less rights than a corporate stockholder, for he did not even have a right in the management of the partnership. Instinct in the term "business pursuit" is the requirement of a *continued or regular activity* for the purpose of earning a livelihood, a condition not satisfied by the limited financial investment made by plaintiff in the instant case (see, generally, 48 ALR3d 1096, Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy). Nor is plaintiff's status as a limited partner in a real estate syndicate at all analogous to the situation of one who, as an "outside" director of a bank, holds a fiduciary position of responsibility, with its concomitant requirement of the rendition of services, sufficient to bring him within the "business pursuit" ambit of a liability policy *(Stern v Insurance Co. of North Amer.,* 62 NJ 582). In summary, since the term "business pursuit" is not defined in the policy it should be given a meaning that would be arrived at by the commonsense

viewpoint of the average person *(Lewis v Ocean Acc. & Guar. Corp.,* 224 NY 18, 21) or, phrased differently, by the "reasonable expectation and purpose of the ordinary business man when making an ordinary business contract" *(Johnson Corp. v Indemnity Ins. Co. of North Amer.,* 7 NY2d 222, 227; see, also, *Morgan v Greater N. Y. Taxpayers Mut. Ins. Assn.,* 305 NY 243, 248; *Cee Jay Realty Corp. v Aetna Cas. & Sur. Co.,* 37 AD2d 535, mod. on other grounds 30 NY2d 754). An ordinary businessman surely would not regard plaintiff's status as a limited partner as a business pursuit. Furthermore, since the phrase, as it appears in the policy, is at least arguably ambiguous, it must be given the construction most favorable to the insured *(Sperling v Great Amer. Ind. Co.,* 7 NY2d 442, 450; *Greaves v Public Serv. Mut. Ins. Co.,* 5 NY2d 120, 125; *Hartol Prods. Corp. v Prudential Ins. Co. of Amer.,* 290 NY 44). Special Term therefore was in error in denying plaintiff coverage based on the "business pursuits" provision of the policy. II. THE INTENTIONAL INJURY "EXCLUSION" Defendant undertook to indemnify plaintiff for all sums which he could become legally obligated "to pay as damages, because of personal injury * * * caused by such an occurrence". "Personal injury" is defined *in the body of the policy* to specifically include "libel, slander, defamation of character or reputation, invasion of rights of privacy, humiliation or mental anguish". However, an endorsement to the policy excludes coverage for "any personal injury * * * caused intentionally by or at the direction of the Insured." Special Term also relied on this exclusion to support its determination in favor of defendant. That reliance, in my opinion, was erroneous for two reasons. First, coverage for slander is specifically provided for in the body of the policy.[2] Defendant should not be permitted to escape its acceptance of express and affirmative coverage for slander by the amorphous and ambiguous limitation of coverage contained in the endorsement. If this limitation was intended to apply to a slander committed "by or at the direction of the insured", defendant could have so provided in understandable terms. Indeed, when it intended such a result, i.e., an exclusion of coverage for the personal and intentional acts of the insured, it had no difficulty in finding appropriate language to accomplish that result, for within the definition of "personal injury" set forth in subdivision (d) of section 5.9 of the policy coverage is *excluded* for illegal discrimination "committed by or at the direction of the Insured" (see n 2 of this dissent). Having used that phrase in one subdivision of its "personal injury" definition, it could very easily have used the same phraseology if it intended its slander coverage to exclude acts intentionally committed by the insured. Not having done so, it is not now in a position to urge that such a limitation should be applied. Secondly, as in the case of the phrase "business pursuits", the intentional injury exclusion, when considered in the context of the obvious purpose of the policy, which, on its cover sheet, informs the insured that "such perils as libel, slander, personal injury and contractual liability are included", is ambiguous with regard to the proper scope of coverage and to the breadth of the intended limitations on coverage.[3] In such circumstances, it is hornbook law that the ambiguity must be

---

2. Indeed, the policy provides coverage for a long list of "intentional" torts gathered under the umbrella of "personal injury", viz.: "5.9 personal injury means: * * * (b) false arrest or false imprisonment, wrongful eviction or malicious prosecution; (c) libel, slander, defamation of character or reputation, invasion of rights of privacy, humiliation or mental anguish; or (d) if not committed by or at the direction of the Insured, illegal discrimination or, unless so committed for the protection of persons or property, assault and battery".

3. The cover page of the policy, while clearly not an operative part of the insurance

resolved against the insurer and in favor of the insured *(Sperling v Great Amer. Ind. Co.,* 7 NY2d 442, *supra; Greaves v Public Serv. Mut. Ins. Co.,* 5 NY 2d 120, *supra)* and especially where, as here, an affirmative undertaking of the insurer as delineated in the body of its policy is sought to be limited by an exclusionary clause *(Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356; *Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386; *Hartol Prods. Corp. v Prudential Ins. Co. of Amer.,* 290 N.Y. 44, 49–50). "The insurer is cloaked with the burden of proving that the \* \* \* claim \* \* \* came within the exclusions of the policy *(Prashker v United States Guar. Co.,* 1 NY2d 584, 592; *Wagman v American Fid. & Cas. Co.,* 304 NY 490)" *(International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 327). Under the circumstances, the insurer should not be permitted to escape coverage in reliance upon the ambiguous terms of the so-called exclusionary clause in the policy. Furthermore, and accepting *arguendo* defendant's interpretation of the exclusionary clause, it is at least open to question whether plaintiff actually *intended* to damage the reputation of his general partners. Is it not fairly arguable that the alleged damage claimed by them was caused by the *unintended* result of an *intentional* act and thus was not "caused intentionally" (cf. *Baldinger v Consolidated Mut. Ins. Co.,* 15 AD2d 526, affd 11 NY2d 1026; *Finch v Swingly,* 42 AD2d 1035)? On this view, coverage is not excluded, even under the terms of the endorsement. Judgment should therefore issue declaring that defendant is obligated to defend plaintiff and to indemnify him for any judgment which may be rendered against him in the slander action, together with the payment to him of counsel fees and disbursements so far, or hereafter reasonably to be, incurred in the defense of that action.

contract, nevertheless does purport to outline the scope of coverage. The portion pertinent to this appeal reads as follows: "GENERAL SUMMARY OF COVERAGE \* \* \* *"Protects you when your primary policies do not apply* [emphasis in original]. ('Drop Down' Coverage) Furnishes automatic catastrophe protection of at least one million dollars in many areas of possible loss which are probably not covered by your regular insurance policies. Such perils as *libel, slander* [emphasis supplied], personal injury and contractual liability are included, subject to a reasonable deductible or 'self-insured retention'."