No. 85-71

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

NEAL HEGGEN,

        Plaintiff and Appellant,

   -vs-

MOUNTAIN WEST FARM BUREAU MUTUAL
INSURANCE COMPANY,

        Defendant and Respondent.

_____

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Fallon,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Huntley & Eakin; Gene Huntley argued, Baker, Montana

    For Respondent:

        Crowley, Haughey, Hanson, Toole & Dietrich; Herbert
        I. Pierce argued, Billings, Montana
        L. B. Cozzens, Billings, Montana

_____

Submitted: November 14, 1985

Decided: March 18, 1986

Filed: MAR 18 1986

_____
Ethel M. Harrison
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Neal Heggen appeals a judgment of the Fallon County District Court which granted Mountain West Farm Bureau Mutual Insurance Co. (Mountain West) a summary judgment. The District Court ruled that George Eichhorn's steer-roping contests were a business pursuit, and as such, were excluded from coverage under a policy of insurance relating to farm operations. We affirm.

While Mr. Heggen raises three issues on appeal, we find the following issue dispositive:

Did the District Court err in ruling that the jackpot steer-roping contests held by Mr. Eichhorn were a "business pursuit" excluded from insurance coverage, rather than a spare time recreational activity within the insurance coverage?

George Eichhorn, a Baker, Montana resident, had worked for the State of Montana as a brand inspector since 1962. In July 1973, he purchased a policy of insurance for his small ranch from Mountain West. The policy provided coverage for accidental bodily injury to persons on the premises with the permission of the insured. However, it specifically excluded from coverage all "business pursuits." The policy also provided that written notice of an accident was to be given by the insured to Mountain West as soon as practicable, but in no event to exceed 60 days.

In 1975, Mr. Eichhorn constructed a roping arena on his land. He began holding jackpot steer-roping contests. He held three or four steer-roping contests in each of the years 1975, 1976 and 1977. Nonprofessional cowboys and ranchers participated in the contests and paid a $48 to $50 fee to rope a certain number of cattle. Mr. Eichhorn reserved

2

approximately $300 to $400 from each contest, and the balance of the fees were distributed to the winning ropers as prizes.

After Mr. Heimbuch, the local agent for Mountain West, had observed that Mr. Eichhorn was constructing a roping arena in 1975, he advised Mr. Eichhorn that the roping arena and roping contests were not covered under the Mountain West insurance policy. Mr. Eichhorn testified that the agent made it plain to him that he should have another policy to cover the ropers. He did not take any steps to get such a policy, because of the cost.

On July 23, 1977, Neal Heggen was permanently injured when his horse tripped and fell on him during one of Mr. Eichhorn's contests. Mr. Eichhorn was present on the day of the accident and was aware that Mr. Heggen's injuries were serious. Mr. Eichhorn did not immediately notify Mountain West of the accident, based in part on his belief that Mr. Heggen would not sue him. Mr. Heggen's attorney contacted Mr. Eichhorn in the spring of 1980, and in July 1980, filed a complaint against him. Mr. Eichhorn notified Mountain West and delivered a copy of the complaint to Mountain West. In turn, Mountain West advised Mr. Eichhorn they were not going to defend him in the action, because the jackpot steer-roping was a "business pursuit" and excluded from coverage, and because Eichhorn failed to timely notify Mountain West pursuant to the policy provisions. Mr. Eichhorn allowed a default judgment to be taken against him in the action brought by Mr. Heggen. On October 1, 1980, Mr. Heggen signed a covenant not to execute on the judgment against Mr. Eichhorn, in exchange for an assignment to Mr. Heggen of all of Mr. Eichhorn's policy rights against Mountain West. Mr. Heggen then filed suit against Mountain West, alleging that the insurance company wrongfully refused to defend Mr. Eichhorn

3

in the suit brought by Mr. Heggen and wrongfully refused to pay Mr. Heggen any damages for personal injuries.

Mountain West moved for summary judgment. The District Court entered summary judgment for Mountain West, holding that "[t]he totality of the circumstances strongly indicate that Eichhorn was engaged in a business pursuit excluded by the policy." Mr. Heggen argues that summary judgment was not appropriate because there is a genuine issue of fact as to whether the jackpot steer-roping contests were a business pursuit.

Mr. Eichhorn's insurance policy provides that "[t]his policy does not apply . . . to any business pursuits of an Insured . . ." The policy defines "business" as follows:

> "Business" means trade, profession or occupation, other than:
>
> (a) farming
>
> (b) the operation of roadside stands maintained on the farm premises principally for the sale of the produce raised thereon, or
>
> (c) newspaper delivery, babysitting, caddying, lawn care, and similar activities ordinarily performed by minors, when the activity is not the principal occupation of the Named Insured, and is not a full-time occupation of any insured.

Montana has not specifically adopted criteria for determining what is a "business pursuit" for purposes of insurance policy exclusionary clauses. Other jurisdictions, in their definitions of "business pursuit," have addressed the idea of profit or profit motive, and most have required some level of continuity or regularity of the activity. See Annot., 48 A.L.R.3d 1096 (1973).

The Supreme Court of Oklahoma has elaborated upon the profit or profit motive element of a business pursuit as follows:

4

> In a business pursuit the profit motive, or purpose of a profit, is important. Whether there is or is not actual profit is immaterial. Does a pursuit have to be successful from a profit standpoint before it is a business pursuit? If a business suffers a loss, was it not a business? The answers are obvious. Profit motive, not actual profit, makes a pursuit a business pursuit.

Wiley v. Travelers Insurance Company (1974 Okla.), 534 P.2d 1293, 1295. That court found that a man who bred, raised, and sold St. Bernard puppies part-time at his residence, in addition to holding another full-time job, was engaged in a business pursuit because of the presence of a profit motive. There was testimony that he intended to retire and raise St. Bernard puppies. Wiley, 534 P.2d at 1295. The part-time aspect of the dog operation did not prevent it from involving a profit motive, and it was not necessary that the activity result in actual net profits to possess a profit motive. We agree with the reasoning of the Oklahoma court and hold that the presence of a profit motive is one characteristic of a "business pursuit."

The exclusionary provision in the insurance policy in the Wiley case defined business, as does the present policy, as "a trade, profession, or occupation." Yet, the part-time nature of Mr. Wiley's dog operation did not prevent it from being a "business pursuit." The Oklahoma Court distinguished Mr. Wiley's business of raising, breeding, and selling St. Bernard puppies from simply holding a family pet litter sale. It pointed out the continuing nature of Mr. Wiley's venture--he had extensively renovated a barn to serve as a kennel and had done extensive fencing in his back yard. Wiley, 534 P.2d at 1295. In contrast, some jurisdictions require an activity to be the sole or primary occupation of the insured, in order to be a "continually or

5

regularly-conducted activity." See Brown v. Peninsular Fire Ins. Co. (Ga. 1984), 320 S.E.2d 208, 209. We reject that view. The more expansive interpretation of regularity or continuity in a "business pursuit" is consistent with the provision in Mr. Eichhorn's insurance policy that "business pursuits of an insured" (emphasis added) are not covered. We, as have others, hold that an activity which is continually or regularly conducted may be a business pursuit even though it is not the primary occupation of the insured. See citations at Krings v. Safeco Ins. Co. of America (Kan. 1981), 628 P.2d 1071, 1075.

Mr. Eichhorn's testimony, in a deposition which was before the District Court when it considered the motion for summary judgment, establishes a profit motive. From his testimony, it is clear that he received something in the vicinity of $1,200 to $1,500 each year from the fees paid on the steer-roping contests. He listed those amounts on his income tax returns. He listed as expenses on his income tax returns the steers which he purchased for the steer-roping and the hay which he fed the steers and the eight or ten horses which were used in the steer-roping. It is true that he testified that his income tax return showed no profit, but that appeared to be because he lost money on buying and selling the steers. We hold that Mr. Eichhorn's testimony on the income and expenses, and his treatment of them on his income tax returns, established a profit motive.

Mr. Eichhorn testified that he held three or four steer-roping contests in each of the years 1975, 1976 and 1977. Mr. Eichhorn also testified by deposition at length as to the roping arena which he built in 1975. It was a permanent arena, with catch pen, return alley, timer's box, chutes and bleachers. He described the fence around the outside of

6

the arena as having posts which consist of railroad ties and woven wire on the posts with a plank around the top of the woven wire and a bumper pole in the middle, the fence being five feet high. The planks were 2" x 8". There were two sets of bleachers with three plank rows for each set. The total capacity of the bleachers was approximately forty persons. Mr. Eichhorn's testimony clearly establishes that these steer-roping contests were held on a regular basis in a permanently designed roping arena constructed expressly for that purpose. We hold that the evidence established that there was a regular and continuous level of activity which amounted to a business pursuit.

A summary judgment is proper if the record discloses no genuine issue of material fact. Downs v. Smyck (1982), 200 Mont. 334, 344, 651 P.2d 1238, 1243. There is no issue of material fact which has been shown. There is no contradiction in the facts. The question to be decided is whether the testimony on behalf of the plaintiff, uncontradicted in any aspect, is sufficient to establish that Mr. Eichhorn was engaged in a business pursuit. We hold that Mr. Eichhorn's own testimony establishes that there was a profit motive and that he conducted the steer-roping contests on a regular and continuing basis. We affirm the District Court in its conclusion that Mr. Eichhorn was engaged in a business pursuit. We therefore do not consider the other issues raised.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

7

_John Conway Harrison_

_R. C. Gulbrandson_

Justices

8

Mr. Justice William E. Hunt, Sr., dissenting:

The majority holds that as a matter of law jackpot steer-roping contests are a business pursuit. I cannot agree. A business pursuit is characterized by continuity and the existence of a profit motive.

In the case at bar, the steer-roping contests were not held on a regular basis. Three to four were held in the summer of 1976, for example, but only one in the summer of 1980. Throughout this period, Eichhorn continued in his occupation as a State Brand Inspector. While Eichhorn participated in the contests held at his ranch, he did not participate in all the contests held in the area. There is a genuine issue of fact whether this level of activity is "continuous" enough to amount to a business pursuit.

A business pursuit is also characterized by the existence of a profit motive. As the majority correctly points out, it is the motive to realize a profit and not the actual realization of a profit that is the critical factor. All the money Eichhorn collected from the participants in the contests was awarded to the contest winners with the exception of a small amount retained by Eichhorn to cover the cost of feeding the stock. Bleachers were sometimes erected to accommodate spectators, but spectators were never charged admission. While Eichhorn listed the fees he collected and the expenses he incurred from the contests on his income tax returns, the majority's reliance on this fact is misplaced. Income tax returns are a device to determine the amount of tax owed to the government, and nothing more. They are not used to demonstrate financial worth or a profit motive. Had Eichhorn failed to report these items on his income tax

return, he would have been in violation of the law. The fact that he did report these items as required by law does not evince a profit motive.

Since this is an appeal from a summary judgment, all reasonable inferences that can be drawn must be drawn in favor of the losing party, Eichhorn. That being the case, there is a genuine question whether Eichhorn was engaged in a business pursuit, characterized by continuity and a profit motive. This question should have been decided by the jury, and not by the trial court upon a motion for summary judgment.

_____
Justice

Mr. Justice John C. Sheehy and Mr. Justice Frank B. Morrison, Jr. join in the dissent of Mr. Justice William E. Hunt, Sr.

_____
Justices