Strafford
No. 94-203

ALLSTATE INSURANCE COMPANY

v.

ROBERT CROUCH & a.

October 27, 1995

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the plaintiff.

*Anthony A. McManus, P.A.*, of Dover, for defendant Robert Crouch, filed no brief.

*Downs Rachlin & Martin*, of Littleton (*Gregory S. Clayton* on the brief and orally), for defendants Raymond and Jacqueline Smith.

BROCK, C.J. The Superior Court (*Mohl,* J.) ruled that a homeowner's policy issued by the plaintiff, Allstate Insurance Company, affords coverage to defendant Robert Crouch. The trial court ruled that the policy's business pursuits exclusion was inapplicable. We reverse.

The case was submitted to the trial court on an agreed statement of facts. Defendants Robert Crouch and Raymond Smith, friends for many years, shared an interest in restoring and repairing vehicles. In their spare time, they worked together on their own vehicles and on those of their friends. In 1986 or 1987, Crouch and Smith formed R & R Auto (R & R), an unincorporated partnership, in order to take advantage of dealers' price discounts and to depreciate their tools for tax purposes. R & R's auto body repair work was performed in an attached two-door garage at the home of Smith and his wife, Jacqueline, who is the third defendant in this action. In addition to housing R & R, the Smiths' garage contained some of the Smiths' personal items and was used by Smith to work on his own vehicles.

Under the R & R name, Crouch and Smith took on auto body work for customers to raise funds for their own automotive hobbies, including restoring their own vehicles. R & R had business cards and letterhead for customers' estimates, and occasionally used funds for promotional items featuring the R & R name. Profits in the

R & R checking account that exceeded $2,000 were divided equally between Crouch and Smith. Proceeds were also used to purchase tools for R & R, which Crouch depreciated on his personal tax returns as R & R business assets. Other proceeds went into a fund for Crouch and Smith to buy parts for their personal vehicles. R & R had gross business receipts of more than $10,000 in 1988, and $13,000 in 1989. In 1990, it grossed $36,000, with forty-five to fifty paying customers.

On March 18, 1991, a fire occurred in the Smiths' garage while Crouch was welding a frame on a pickup truck that belonged to Smith. Welding sparks ignited combustible materials used for auto body repair work on the shop floor and also burned through oxyacetylene gas lines to propane tanks, which exploded. The cost of renting the tanks and providing electricity to the garage was paid with R & R funds.

The fire destroyed the Smiths' garage, their home, and all contents. After paying for their losses, the Smiths' homeowner's insurance carrier, New England Guaranty, instituted a subrogation action against Crouch, who was defended by Allstate, pursuant to his personal homeowner's policy. The policy includes a "business pursuits" exclusion, which provides: "We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person." "Business" is defined in the policy as "any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes."

Allstate filed a petition for declaratory judgment, seeking a determination that Crouch's welding activity was a business activity excluded from coverage under the business pursuits exclusion. The trial court ruled that because Crouch was engaged in the non-profit activity of restoring Smith's pickup truck when the fire started, his conduct was without profit motive and therefore did not qualify as a business pursuit.

The insurer bears the burden of proving the lack of coverage. RSA 491:22-a (1983). The parties agree that the controlling definition for the business pursuits exclusion is stated in *Haley v. Allstate Insurance Co.*, 129 N.H. 512, 529 A.2d 394 (1987): "[T]he definition of 'business pursuit' contains two significant elements: profit motive and continuity." *Id.* at 514, 529 A.2d at 396. Based on the facts recounted above, these elements were met; the automotive repair work of R & R constituted business activities within the policy exclusion.

▮▮▮ The defendants maintain, however, that because on the day in question Crouch performed the work gratuitously, the exclusion

is inapplicable. We disagree. "For exclusion purposes, the focus is on the business pursuit itself, not the specific acts complained of." *State Mut. Ins. Co. v. Russell*, 462 N.W.2d 785, 788 (Mich. Ct. App. 1990), *appeal denied*, 495 N.W.2d 388 (Mich. 1992). The business pursuit here was the profitable automotive repair business. The injury-causing activity was the type of work that R & R Auto customarily performed. That on the particular occasion at issue the work was performed gratuitously does not take it outside the business pursuits exclusion. *See id.* at 788–89; 7A J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4501.10, at 275–76 (Berdal ed. 1979).

The defendants rely on decisions from other jurisdictions to support their argument that where the particular injury-causing activity was not for profit, even though the insured was engaged in conduct of the type done by his business, the business pursuits exclusion was inapplicable. *See, e.g., Lane v. Hartford Fire Ins. Co.*, 343 F. Supp. 79 (E.D. Mo. 1972); *Edwards v. Trahan*, 168 So. 2d 365 (La. Ct. App. 1964). We believe that these decisions rest on an unreasonably narrow interpretation of the profit motive requirement.

When Crouch and Smith formed R & R, their purpose was to take advantage of dealers' price discounts for tools and equipment and to depreciate their tools for federal income tax purposes. Some of their business revenue supported their "automotive hobbies," and they also distributed profits from their business checking account to themselves. In short, the existence of R & R inured to the financial benefit of the defendant, the insured. The profit motive inhered in the enterprise itself.

■ Noting that Crouch and Smith had historically worked on each others' vehicles without compensation, the defendants argue that the welding that caused the fire arose out of their long-standing hobby, not out of business activities. "The phrase 'arising out of' has been interpreted as a very broad, general and comprehensive term, which we have defined as meaning 'originating from or growing out of or flowing from.'" *Merrimack School Dist. v. Nat'l School Bus Serv.*, 140 N.H. 9, 13, 661 A.2d 1197, 1199 (1995) (quotation omitted). A finding of direct and proximate cause is not required for finding that an event arose out of a certain activity. *Union Mut. Fire Ins. Co. v. King*, 113 N.H. 39, 41, 300 A.2d 335, 336 (1973). To argue that the specific automotive activity here arose only out of Crouch's and Smith's hobby rather than their business activity is to ignore the significant financial advantages the two men gained through the operation of R & R.

■  "The general rule is that the court will honor the reasonable expectations of the policy holder." *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982). It may be reasonable for an insured to expect coverage under a homeowner's policy for damage resulting from occasionally engaging in personal hobbies. But once the hobby has been transformed into a part-time business, as in this case, with close to fifty customers, annual gross revenue of $36,000, and tools and equipment commensurate with such an operation, it is unreasonable to expect that the insurer has agreed to cover such a risk. We hold that the business pursuits exclusion applies to preclude coverage.

*Reversed and remanded.*

All concurred.