564 S.E.2d 677

**STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, Appellant/Respondent,**

v.

**David W. RAYNOLDS, Sherry B. Raynolds, Harold Turner and Catherine Turner, Defendants,**

**of whom David W. Raynolds and Sherry B. Raynolds are, Respondents/Appellants.**

No. 3488.

Court of Appeals of South Carolina.

Heard April 11, 2002.

Decided May 13, 2002.

Rehearing Denied June 19, 2002.

C. Stuart Mauney and Jennifer D. Eubanks, both of Gallivan, White & Boyd, of Greenville, for appellant/respondent.

Robert C. Childs, III and Laura W.H. Teer, both of Mitchell, Bouton, Yokel & Childs, of Greenville, for respondents/appellants.

CURETON, J.:

This is a declaratory judgment action to determine coverage under a homeowner's policy. The trial court found coverage existed under the policy but denied the insureds' request for attorney fees. Both parties appeal. We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

State Auto Insurance Company (State Auto) brought this declaratory judgment action alleging that the insureds, David W. and Sherry B. Raynolds, were not entitled to insurance

coverage or a defense under their homeowner's policy for injuries that occurred on their property when their dog bit Harold Turner (Turner), a professional dog-handler. Turner filed suit against the Raynolds to recover for his injuries. State Auto defended the suit under a reservation of rights and sought to deny coverage based on the business pursuits exclusion of the Raynolds' homeowner's policy.

David Raynolds is a 70 year-old retired engineer with a Ph.D. in chemical engineering. He and his wife operate a retail business selling Merle Norman cosmetic products. They live in Spartanburg and have facilities for breeding and raising Akita show dogs at their home. Each dog has its own kennel with an 80 foot area for exercise. The kennel area is behind the Raynolds' home.

The Raynolds purchased their first Akita in 1989 after their son got an Akita. Soon thereafter, they purchased another Akita as a playmate for their first dog. They eventually purchased additional dogs. Their dogs have birthed five litters of puppies. The Raynolds have kept, given away, and sold the puppies. The puppies sold for various amounts, ranging from $200 to $1500.

The Raynolds have traveled throughout several states to attend dog shows, while professional handlers showed their dogs. The Raynolds first met Harold Turner at a dog show in Atlanta. Turner came to South Carolina on an unrelated matter and arranged to visit the Raynolds to determine if he could show one of their dogs. Turner was bitten by one of the Akitas while working with it. Turner filed a claim with State Auto, the Raynolds' homeowner's insurance carrier. State Auto denied coverage pursuant to the business exclusions section of the policy and filed this declaratory judgment action. The trial court relied on the two-part test set forth in *Fadden v. Cambridge Mutual Fire Insurance Co.*, 51 Misc.2d 858, 274 N.Y.S.2d 235 (N.Y.Sup.Ct.1966), and found State Auto was required to defend the Raynolds and to provide insurance coverage under the homeowner's policy up to the policy limits. The trial court also denied the Raynolds' claim for attorney's fees. The Raynolds and State Auto appeal.

## STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue. An issue essentially one at law will not be transformed into one in equity simply because declaratory relief is sought." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). An insurance policy is a contract between the insured and the insurance company. *Gordon v. Colonial Ins. Co.*, 342 S.C. 152, 155, 536 S.E.2d 376, 378 (Ct.App.2000). Contract actions are actions at law. *Hofer v. St. Clair*, 298 S.C. 503, 508, 381 S.E.2d 736, 739 (1989). In an action at law, on appeal of a case tried without a jury, we may not disturb a trial court's findings of fact unless those findings are "wholly unsupported by the evidence or controlled by an erroneous conception or application of the law." *Maddux Supply Co. v. Safhi, Inc.*, 316 S.C. 404, 406, 450 S.E.2d 101, 102 (Ct.App. 1994).

## LAW/ANALYSIS

### I. Business Pursuits Exclusion

State Auto argues the trial court erred in holding that the Raynolds' Akita activities do not constitute a business as defined in the homeowner's policy. We disagree.

 Insurance policies are subject to general rules of contract construction. *Fritz–Pontiac–Cadillac–Buick v. Goforth*, 312 S.C. 315, 318, 440 S.E.2d 367, 369 (1994). This court must interpret the language in an insurance policy using its plain, ordinary, and popular meaning. *Id.* However, ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer. *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995).

The applicable language in the Raynolds' policy reads:

Section II—EXCLUSIONS....

**Medical Payments to Others** do not apply to bodily injury or property damage ... b.(1) arising out of or in connection with a **business** engaged in by an **insured.** This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty

rendered, promised, owed, or implied to be provided because of the nature of the business. . . .

As defined in the main body of the policy, " **'business'** includes trade, profession, or occupation."

We agree with the trial court that the two-part test set forth in *Fadden v. Cambridge Mutual Fire Insurance Co.*, 51 Misc.2d 858, 274 N.Y.S.2d 235 (N.Y.Sup.Ct.1966), is an appropriate analysis for determining whether the Raynolds' activity constituted a business under the policy provisions. This test is as follows:

> To constitute a business pursuit, there must be two elements: first, continuity, and, secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements. *Id.* at 241.

As to the continuity factor, the trial court stated, "I find that the Raynolds were not customarily engaged in the occupation, trade or profession of raising and showing purebred Akitas. This was a part-time activity on their part and they have other regular or continuous business engagements." We agree that this activity was a hobby and not a customary engagement or occupation for the Raynolds. The Raynolds bred and showed the Akitas as a part-time activity. They had other regular or continuous business engagements in connection with Merle Norman Cosmetics. Mr. Raynolds testified that his "trade" was not raising or showing dogs, but rather it was chemical engineering. He admitted he was retired, though he still does some chemical engineering consulting. He described his activities with the Akitas as "the sport of purebred dogs." The significant amount of time and money the Raynolds spent on the dogs does not automatically convert the activity to a business pursuit.

The second prong of the *Fadden* test requires a profit motive. The trial court found, "the Raynolds' activit[y] with their dogs was not intended to be, nor has it ever been, a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit."

We agree with the trial court that there was no profit motive in the Akita activities. Mr. Raynolds testified as follows:

Q: Have you or will you ever expect to make money off the breeding of dogs?

A: It's almost inconceivable, unless a multi-millionaire decided he wanted to give me a big check. That is sort of like winning the lottery. I don't have any big hopes for winning the lottery.

The Raynolds generated income from the dogs during some years, but never greater than their expenses for the same years. The evidence does not indicate there was a profit motive in connection with the Akita dogs, and we find the trial court did not err in finding the show breeding activity was not a business pursuit.

## II. Testimony of Fran Keys

State Auto argues the trial court erred in admitting the testimony of Fran Keys as an expert in the field of professional dog showing. We disagree.

■■■ The qualification of expert witnesses and the admissibility of their testimony is largely within the discretion of the trial court. *Creed v. City of Columbia,* 310 S.C. 342, 344–45, 426 S.E.2d 785, 786 (1993). We will not disturb a trial court's ruling to exclude or admit expert testimony absent a clear abuse of discretion. *Walker v. Bluffs Apartments,* 324 S.C. 350, 353, 477 S.E.2d 472, 473 (Ct.App.1996). A court may rule that an expert witness is competent if the witness has acquired through study or experience or both, such knowledge and skill in a business, profession, or science that she is more qualified than the jury to form an opinion on the subject of her testimony. *Id.*

Keys was offered as an expert capable of testifying "about primarily the distinction between the amateur show handling and the professional show handling involved in the dog business." The trial court limited her testimony to this specific area and did not allow questions about legal issues. The distinction between amateur and professional dog-handling is not common knowledge, and Keys had special knowledge to explain this distinction in connection with the Raynolds. We

find the trial court did not abuse its discretion in admitting her testimony.

## III. Attorney Fees

The Raynolds argue the trial court erred in denying their claim for attorney's fees in the declaratory judgment action. We agree.

 Attorney's fees are generally not recoverable unless authorized by contract or statute. *Keeney's Metal Roofing, Inc. v. Palmieri,* 345 S.C. 550, 553, 548 S.E.2d 900, 902 (Ct.App.2001). The Raynolds do not assert any statutory right to recover, so they must recover, if at all, upon a contractual right.

We find that *Hegler v. Gulf Insurance Co.,* 270 S.C. 548, 243 S.E.2d 443 (1978) is controlling in the present case. In *Hegler,* the issue was whether an insured is entitled to recover attorney's fees incurred in the successful defense of a declaratory judgment action brought by the insurer in an effort to relieve itself of coverage under an insurance policy. *Id.* at 548, 243 S.E.2d at 443. In finding the insurer was required to pay attorney fees, the *Hegler* court held the following:

> There is no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage. In either event, an insured must employ counsel to defend—in the first instance in the damage action and in the second in the declaratory judgment action to force the insurer to provide the defense. In both, the counsel fees are incurred because of the insurer's disclaimer of any obligation to defend.

*Id.* at 550, 243 S.E.2d at 444. In 1997, our supreme court expressly declined to overrule *Hegler* and upheld an award of attorney's fees. *See First Fin. Ins. Co. v. Sea Island Sport Fishing Soc'y, Inc.,* 327 S.C. 12, 17, 490 S.E.2d 257, 259 (1997).

The legal fees incurred by the Raynolds in successfully asserting their rights against State Auto's declaratory judgment action were damages arising directly as a result of the breach of the contract. Based on our reading of *Hegler,* the Raynolds are entitled to attorney's fees.

Accordingly, based on the foregoing reasons, the decision of the trial court is

**AFFIRMED IN PART and REVERSED IN PART.**

GOOLSBY and ANDERSON, JJ., concur.