592 S.E.2d 633

**STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, Petitioner,**

*v.*

**David W. RAYNOLDS, Sherry B. Raynolds, Harold Turner and Catherine Turner, Defendants,**

**Of Whom David W. Raynolds and Sherry B. Raynolds are Respondents.**

No. 25776.

Supreme Court of South Carolina.

Heard Nov. 19, 2003.

Decided Jan. 27, 2004.

220

C. Stuart Mauney and Jennifer D. Eubanks of Gallivan, White and Boyd, P.A., of Greenville, for petitioner.

Robert C. Childs, III and Laura W.H. Teer of Mitchell, Bouton, Yokel & Childs, of Greenville, for respondents.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS.

TOAL, C.J.:

Petitioner State Auto Property and Casualty Insurance Company ("State Auto") asserts that the Court of Appeals erred when it held that insured David and Sherry Raynolds ("the Raynolds"), were entitled to coverage and a defense for a third party's personal injury that occurred at the Raynolds' home. State Auto also seeks to overturn the trial court's decision awarding the Raynolds attorney's fees. We now reverse the Court of Appeals and hold that the Raynolds were not entitled to coverage, a defense, or attorney's fees.

### FACTUAL/PROCEDURAL BACKGROUND

The Raynolds are a couple who breed, rear, and sell Akita show dogs in Spartanburg. David is a retired engineer, and he and his wife Sherry operate a retail cosmetic business.

The Raynolds have invested a considerable amount of time and money in their dogs. Since 1989, the Raynolds have attended between 40 and 70 dog shows per year, and they are members of the Akita Club of America. They have constructed separate, eighty-square-foot kennels for each dog. They converted their garage into a facility for bathing and grooming the dogs, purchased a specialized canine treadmill to condition the dogs, and acquired a recreational vehicle for transporting themselves, their equipment, and their dogs to shows. They deducted many of the costs of raising, training, and showing their dogs as "Schedule C" business expenses and depreciated items such as the R.V., clothing purchased for the shows, and the canine treadmill on their tax return.

The Raynolds advertise their puppies in various newspapers and publications under the name "Ko–Akita Kennels." The Raynolds also have business cards for "Ko–Akita Kennels," as

well as, grossed $5,000 to $12,000 a year since they began operation.

This case arose after one of the Raynolds' dogs, Emperor, bit Harold Turner ("Turner"), a professional dog-handler, at the Raynolds' home on April 6, 1996. When Turner sued, State Auto defended the Raynolds under a reservation of rights. During the time it defended the Raynolds, State Auto sought a declaratory judgment, seeking to deny the Raynolds coverage and a defense based on the "business pursuits" exclusion in the policy. The exclusion provides:

> Medical Payments to others do not apply to bodily injury or property damage . . . (b) arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

At trial, the court applied the two-pronged test set forth in *Fadden v. Cambridge Mut. Fire Ins. Co.* to determine whether the Raynolds were engaged in a business pursuit. 51 Misc.2d 858, 274 N.Y.S.2d 235 (1967). The trial court found the Raynolds were not engaged in a "business pursuit" and that State Auto was required to defend the Raynolds and provide coverage up to the policy's limits. In addition, the trial court denied the Raynolds' claim for attorney's fees. The Court of Appeals affirmed the trial court as to State Auto's obligations but reversed on the issue of attorney's fees. *State Auto v. Raynolds*, 350 S.C. 108, 564 S.E.2d 677 (Ct.App.2002).

The following issues are before this Court:

I. Did the Court of Appeals err in finding that the Raynolds' activities did not satisfy the "business pursuits" test of *Fadden*?

II. Did the Court of Appeals err in awarding the Raynolds attorney's fees?

## LAW/ANALYSIS

### I. Business Pursuits Test

■ South Carolina has not developed a test for determining whether activities are a "business pursuit" and thus fall

under a homeowners insurance policy exclusion. Courts in other jurisdictions have developed a plethora of tests yielding varied results. In this case, the lower courts applied the two-prong test developed in *Fadden*. 274 N.Y.S.2d at 241. We now hold that this was the proper test to apply.

Under the *Fadden* test, an insurance provider can establish that an insured's conduct falls within a "business pursuits" exclusion if the provider proves two elements: continuity and profit motive.

## A. Continuity Prong

■ Petitioner argues that the Court of Appeals erred in holding that the Raynolds' activities did not meet the continuity prong of *Fadden*. We agree.

The court in *Fadden* defined "continuity" as "a customary engagement or a stated occupation." *Id. Fadden* does little to explain whether a part-time activity could satisfy the continuity prong. However, in a later case, the New York Court of Appeals clarified the *Fadden* test: "for the purposes of the 'business pursuit' exclusion, the 'business' engaged in by [the insured] need not necessarily be limited to his sole occupation or employment...." *Shapiro v. Glens Falls Ins. Co.*, 47 A.D.2d 856, 365 N.Y.S.2d 892 (1975), aff'd 39 N.Y.2d 204, 383 N.Y.S.2d 263, 347 N.E.2d 624 (1976).

Although courts have defined "continuous" in various ways, a majority of courts have held that a "part-time" activity may constitute a business pursuit for insurance coverage purposes. For example, in *Wiley v. Travelers Ins. Co.*, the plaintiff was bitten when he went to the defendant's house to buy a Saint Bernard puppy. 534 P.2d 1293 (Okla.1974). The Oklahoma Supreme Court held that the defendant was engaged in the business of selling puppies even though he was a full-time salesman. *Id.* at 1298.

Other jurisdictions have found that part time activities constitute business pursuits. See *Allstate Ins. Co. v. Crouch*, 140 N.H. 329, 666 A.2d 964 (1995) (an insured's long-standing hobby of automobile repair constituted a business pursuit); *Nationwide Mut. Fire Ins. Co. v. Nunn*, 114 N.C.App. 604, 442 S.E.2d 340 (1994) (insured's operation of a bed and breakfast that operated for three months out of the year was a

"business pursuit"); *Williams v. State Farm & Cas. Co.,* 180 Wis.2d 221, 509 N.W.2d 294 (Ct.App.1993) (insured, who was a part-time investor in the stock market, was engaged in a business); *Heggen v. Mountain W. Farm Bureau Mut. Ins. Co.,* 220 Mont. 398, 715 P.2d 1060 (1986) (insured, who participated in a jackpot steer-roping contest, was engaged in a business); *State Farm & Fire Cas. Co. v. Moore,* 103 Ill. App.3d 250, 58 Ill.Dec. 609, 430 N.E.2d 641 (1981) (insured's part-time babysitting constituted a "business pursuit").

■ In the present case, the parties do not dispute that Ko–Akita Kennels is not the Raynolds' primary occupation. As noted earlier, Mr. Raynolds is a retired engineer, and he and Mrs. Raynolds maintain a retail cosmetic business. Given the amount of time and resources that the Raynolds have contributed to the care, sales, and breeding of their dogs, however, we hold that an activity may be continuous even though it is a "part-time" activity or a secondary occupation.

The Raynolds have been breeding, showing, and selling Akitas for almost fifteen years. Mr. Raynolds spent approximately 120 hours a month caring for the dogs. He also attended dog shows two times a month, each show lasting two to three days. The Raynolds have also spent a considerable amount of time customizing their property to care for the dogs.

The Raynolds' activities represent a "customary activity or a stated occupation" within the meaning of Shapiro. Therefore, the continuity prong of *Fadden* is satisfied.

## B. Profit–Motive Prong

State Auto argues that the Court of Appeals erred in holding that the Raynolds' activities did not meet the profit-motive prong of the *Fadden* analysis. We agree.

The profit-motive prong of *Fadden* may be satisfied when the activity in question is "shown to be such an activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements." *Fadden,* 274 N.Y.S.2d at 241.

■ The Court of Appeals held that the Raynolds did not have a profit motive as to their activities with the dogs

primarily because they never made an actual profit. *State Auto v. Raynolds*, 350 S.C. 108, 564 S.E.2d 677 (Ct.App.2002). However, we recognize that the concepts of profit motive and actual profit are not identical and while the Raynolds' overall income from selling or breeding the dogs may not have produced a profit, evidence suggests that they at least had a motive to cover their costs.

The Raynolds filed losses for "Profit or Loss from Business" under Schedule "C" of their federal income tax return pursuant to 26 U.S.C. § 162 (2003) as to their dog breeding and selling expenses. Courts in other jurisdictions have held that seeking such tax advantages is evidence of a profit motive. See *Heggen v. Mountain West Farm Bureau Mut. Ins. Co.*, 220 Mont. 398, 715 P.2d 1060 at 1060 (1986) (holding that the use of business deductions pursuant to steer roping activities indicated a profit motive despite a lack of actual profit); *Pacific Indem. Ins. Co. v. Aetna Cas. and Surety Co.*, 240 Conn. 26, 688 A.2d 319 (1997) (holding that activities related to boarding horses constituted a business pursuit where the insured depreciated items and deducted expenses, evidencing a profit motive).

Since 1989, the Raynolds have attended between 40 and 70 dog shows a year. Mr. Raynolds testified that he showed his dogs in an attempt to build their reputation, which increases the value of the dogs for purposes of stud fees and breeding prices.

The Raynolds also publicly advertised the sale and breeding prices of their dogs under the name "Ko–Akita Kennels," and they have sold puppies for substantial amounts of money.

Several jurisdictions have held that actual profit is not necessary to satisfy the profit-motive prong. In *Pacific Indem. Ins. Co. v. Aetna Cas. and Surety Co.*, supra, the Connecticut Supreme Court held an insured need not show an actual profit to be engaged in a business pursuit. *Id.* Also see Wiley, 534 P.2d 1293, 1295 (Okla.1974) ("Profit motive, not actual profit, makes a pursuit a business pursuit").

Many businesses are not profitable, but they are businesses nonetheless. Therefore, we hold that the Raynolds' activities satisfy the profit-motive prong.

## II. Attorney's Fees

State Auto argues that the Court of Appeals erred in awarding attorney's fees to the Raynolds. This issue is moot.

 It is well-settled in South Carolina that when a defendant insured prevails in a declaratory judgment action, the insured is entitled to recover attorney's fees. *Hegler v. Gulf Ins. Co.*, 270 S.C. 548, 243 S.E.2d 443 (1978). However, in this case, the Raynolds did not prevail and therefore, the issue is moot.

## CONCLUSION

We now reverse the Court of Appeals on the "business pursuits" issue holding that the Raynolds were involved in a business pursuit; Turner's injuries were connected to that pursuit; State Auto properly denied coverage pursuant to an enforceable exclusion; and thus, the issue of attorney's fees is moot.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.