## PACIFIC INDEMNITY INSURANCE COMPANY *v.* AETNA CASUALTY AND SURETY COMPANY (15484)

Callahan, C. J., and Borden, Berdon, Katz and Palmer, Js.

Argued December 11, 1996—officially released February 11, 1997

*Peter J. Ponziani*, with whom was *Christopher Coxon*, for the appellant (plaintiff).

*David Tilles*, for the appellee (defendant).

BERDON, J. The sole issue raised in this appeal is whether, under the circumstances of this case, the boarding of horses constitutes a "business pursuit" excluded from the coverage of a homeowner's insurance policy. The plaintiff, Pacific Indemnity Insurance Company (Pacific), appeals from a judgment of the trial court in which the court concluded that the boarding of horses by Pacific's insureds constituted a business pursuit as defined in an exclusion to the homeowner's insurance policy issued by the defendant, Aetna Casualty and Surety Company (Aetna). We affirm the judgment of the trial court.

The following undisputed facts are relevant to this appeal. In 1985, Carol and Charles Popp, Pacific's insureds, began boarding horses at their farm, which is known as Hidden Bridge Farm. Aetna's insureds, Susan and Harold Dale, boarded their horse at Hidden Bridge Farm, paying $480 per month. The Popps hired Karen Deutsch as an independent contractor to care for the horses boarded at the farm, including the Dales' horse. In December, 1989, Deutsch was injured when she was kicked by the Dales' horse. At the time that Deutsch was injured, the Popps were insured by Pacific. Thereafter, Deutsch brought an action against the Popps seeking damages for her injuries. Pacific and the Popps subsequently made a demand on Aetna to defend the Popps and to provide coverage[1] because the homeowner's insurance policy issued to the Dales by Aetna included, as an additional insured, "any person or organization legally responsible for" their horse. Aetna refused to defend them or to provide coverage, claiming that the Popps were engaged in a business pursuit within the meaning of an exclusion in its policy. Specifi-

---

[1] Pacific claims that Aetna was the primary insurer, and that Pacific's liability under the policy issued to the Popps was secondary.

cally, the exclusion provided: "A person or organization using or having custody of these animals . . . in the course of any business, or without permission of the owner is not an insured . . . ."[2]

At the time of the accident, the Popps were both employed full-time in pursuits other than the boarding of horses at Hidden Bridge Farm. The Popps began to board horses at the farm in an attempt to defray the expenses of Carol Popp's own riding activities. The number of horses that they boarded ranged at various times from three to six. In addition to boarding horses, the Popps offered training and riding lessons. During the period from 1987 to 1990, the Popps reported profits and claimed losses from their horse-related activities as a farm business on their federal income tax returns.[3] The Popps did not report their farm income under 26 U.S.C. § 183, the so-called "hobby rules," which pertain to activities "not engaged in for profit." The "hobby rules" preclude taxpayers from using hobby expenditures that exceed income as deductions to offset income from taxpayers' business activities. See 26 U.S.C. § 183 (a) (1994). Indeed, the Popps deducted expenses from their gross income that included depreciation from a portion of their farm property, pursuant to 26 U.S.C. § 167 (a),[4] which provides for the allowance of deprecia-

---

[2] The Aetna policy also provided a similar exclusion for medical payments as follows: "Medical Payments to Others do not apply to bodily injury or property damage . . . arising out of business pursuits of any insured . . . ." The policy's definition of business "includes trade, profession or occupation."

[3] Specifically, the Popps reported gross and net income during those years as follows, with the figures in parentheses indicating a loss:

| | | | |
|---|---|---|---|
| 1987 — gross: | $43,241; | net: | $667 |
| 1988 — gross: | 55,188; | net: | (15,914) |
| 1989 — gross: | 52,889; | net: | 951 |
| 1990 — gross: | 51,213; | net: | (15,442) |

[4] Title 26 of the United States Code, § 167 (a) (1994), provides: "There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

tion deductions on business property only.[5]

Pacific then brought this action seeking a declaratory judgment that Aetna is required to indemnify and defend the Popps in the action brought by Deutsch. The parties subsequently filed cross motions for summary judgment. The trial court granted Aetna's motion for summary judgment, concluding that the Popps' boarding of horses constituted a business pursuit that was excluded from coverage under the Aetna policy. Pacific appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, Pacific argues that the trial court incorrectly interpreted the majority rule with respect to the definition of a business pursuit. Specifically, Pacific contends that the trial court improperly concluded that the Popps were boarding horses with a profit motive when, in fact, it was not their means of earning a livelihood. In response, Aetna argues that a business pursuit need not constitute the insured's sole or principal source of income, but, rather, that a business pursuit denotes any continuous activity that an insured carries out for the purpose of earning a profit. We agree with Aetna.

We begin our analysis with the general principles governing the construction of insurance policies. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The policy words must be accorded

"(1) of property used in the trade or business, or

"(2) of property held for the production of income."

[5] The Popps claimed the following amounts as depreciation deductions: in 1987 - $10,142; in 1988 - $16,651; in 1989 - $13,525; and in 1990 - $10,000

their natural and ordinary meaning. . . . Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Citations omitted; internal quotation marks omitted.) *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 542–43, 687 A.2d 1262 (1996).

The threshold question in our inquiry is the meaning of the term "business pursuits." Although this court has not previously addressed the construction of insurance policies with respect to the definition of business pursuits, we find guidance in the decisions of other jurisdictions. The seminal case in this regard is *Home Ins. Co.* v. *Aurigemma*, 45 Misc. 2d 875, 879, 257 N.Y.S.2d 980 (1965), in which the New York Supreme Court concluded that the term business pursuits encompassed two elements, continuity and profit motive. "As to the first, there must be a 'customary engagement' or a 'stated occupation'; as to the latter, there must be shown to be such activity as a 'means of livelihood'; 'gainful employment'; 'means of earning a living'; 'procuring subsistence or profit'; 'commercial transactions or engagements.' " Id. In a subsequent New York Appellate Court decision, *Shapiro* v. *Glens Falls Ins. Co.*, 47 App. Div. 2d 856, 365 N.Y.S.2d 892 (1975), aff'd, 39 N.Y.2d 204, 347 N.E.2d 624, 383 N.Y.S.2d 263 (1976), the court clarified that "for purposes of the 'business pursuits' exclusion, the 'business' engaged in by [the insured] need not necessarily be limited to his *sole* occupation

or employment . . . ." (Citation omitted; emphasis in original.)

The majority of jurisdictions that have considered this issue have followed *Aurigemma*, holding that the term business pursuits means a continued or regular activity that is conducted for the purpose of profit, such as a trade, profession or occupation. See, e.g., *Pullen* v. *Cincinnati Ins. Co.*, 400 So. 2d 393, 402 (Ala. 1981); *Industrial Indemnity Co.* v. *Goettl*, 138 Ariz. 315, 318–19, 674 P.2d 869 (App. 1983); *Saha* v. *Aetna Casualty & Surety Co.*, 427 So. 2d 316, 318 (Fla. App. 1983); *Heggen* v. *Mountain West Farm Bureau Mutual Ins. Co.*, 220 Mont. 398, 401–402, 715 P.2d 1060 (1986); *Fadden* v. *Cambridge Mutual Fire Ins. Co.*, 51 Misc. 2d 858, 862, 274 N.Y.S.2d 235 (1966), aff'd, 27 App. Div. 2d 487, 280 N.Y.S.2d 209 (1967); see annot., 48 A.L.R.3d 1096, 1099 (1973) ("courts have generally taken the restrictive view that this phrase denotes a continuous or regular activity for the purpose of earning a livelihood, such as a trade, profession, or occupation, or a commercial enterprise").[6]

We conclude that the majority interpretation of the term business pursuits for the purposes of an exclusionary clause in a homeowner's insurance policy is consistent with the terms of the Aetna policy in this case. The definition of "business" in the Aetna policy "*includes* trade, profession or occupation." (Emphasis added.) See footnote 2. It is well settled that in construing insurance policies, "words must be accorded their natural and ordinary meaning." (Internal quotation marks omitted.) *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 542. Because the word "includes" is a term of

[6] A minority of courts have held that the term business pursuits should be interpreted as embracing all activities that a person undertakes in which profit is a motive. See *Salerno* v. *Western Casualty & Surety Co.*, 336 F.2d 14, 19 (8th Cir. 1964); *Last* v. *West American Ins. Co.*, 139 N.J. Super. 456, 462, 354 A.2d 364 (1976). We reject that all-inclusive definition.

expansion, "business includes, but is not limited to, the 'trade, profession or occupation' of the insured." *Gaynor* v. *Williams*, 366 So. 2d 1243, 1244 (Fla. App. 1979). Consequently, we find the approach adopted by the New York courts and the majority jurisdictions to be accurate and to reflect the ordinary meaning of business pursuits.

Pacific, in its brief, also argues that the majority view defines "business pursuit" only to include an activity that "is predominantly engaged in as *a means of livelihood*, and that at the very least it is one's principal occupation, not a secondary activity engaged in during one's leisure time." (Emphasis in original.) We disagree with such a narrow interpretation. Several courts have rejected the argument that part-time or supplemental income activities do not constitute business pursuits. See *Automobile Underwriters, Inc.* v. *Hitch*, 169 Ind. App. 453, 457–58, 349 N.E.2d 271 (1976); *Krings* v. *Safeco Ins. Co. of America*, 6 Kan. App. 2d 391, 394–95, 628 P.2d 1071 (1981); *Wiley* v. *Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974). Moreover, use of the plural term "business pursuits" in the Aetna policy, as opposed to the singular term "business pursuit," undermines the inference that only the insured's sole or principal occupation or trade is excluded under the policy. *Krings* v. *Safeco Ins. Co. of America*, supra, 395 n.1.

Pacific further argues in its brief that under the trial court's rationale, "*any activity where profit is a motive constitutes a business*, regardless of whether the facts of the case show that the activity is not engaged in for the purpose of earning a livelihood." (Emphasis in original.) Pacific, therefore, contends that the trial court effectively adopted the minority rule.[7] Again, we are unpersuaded. Pacific ignores the first element of the majority approach—continuity of the activity. Indeed,

---

[7] See footnote 6.

other jurisdictions have noted that "[n]ot every activity undertaken for profit is necessarily a business pursuit . . . ." *O'Conner* v. *Safeco Ins. Co. of North America*, 352 So. 2d 1244, 1246 (Fla. App. 1977); *Camden Fire Ins. Assn.* v. *Johnson*, 170 W. Va. 313, 315, 294 S.E.2d 116 (1982). Further, as this court has pointed out in the context of unemployment compensation, a business activity must be undertaken "not as an isolated instance but as a regular or continuous practice . . . ." *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, 238 Conn. 273, 280, 679 A.2d 347 (1996).

We conclude that the term "business pursuits," for the purposes of the exclusionary clause in the Aetna policy, contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood. The determination of whether a particular activity constitutes a business pursuit is to be made by a flexible fact-specific inquiry. *Asbury* v. *Indiana Union Mutual Ins. Co.*, 441 N.E.2d 232, 239 (Ind. App. 1982); 7A J. Appleman & J. Appleman, Insurance Law and Practice (1979) § 4501.10, p. 273.[8]

With these principles in mind, we turn to the undisputed facts of this case. As Pacific points out in its brief, "[t]here is no question in this case that the Popps' activities involving the Hidden Bridge Farm were 'continuous.' " Our inquiry, therefore, focuses on whether the second element—profit motive—has been satisfied.

---

[8] We emphasize that this case-by-case analysis and an interpretation of policy language consistent with the insured's reasonable expectations may, in some instances, result in coverage for an insured's activity. "It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." (Internal quotation marks omitted.) *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 843, 669 A.2d 1221 (1996).

Although the Popps did not board horses as their sole means of livelihood, they nevertheless conducted the activity for the purpose of earning a profit. It is of no moment that, during two of the years in question, 1988 and 1990, the Popps incurred net losses from this activity. As the Supreme Court of Oklahoma pointed out in *Wiley* v. *Travelers Ins. Co.*, supra, 534 P.2d 1295: "In a business pursuit the profit motive, or purpose of profit, is important. Whether there is or is not actual profit is immaterial. Does a pursuit have to be successful from a profit standpoint before it is a business pursuit? If a business suffers a loss, was it not a business? The answers are obvious. Profit motive, not actual profit, makes a pursuit a business pursuit." Furthermore, by boarding horses at a fee of $480 per month per horse, Carol Popp was able to offset expenses for her own riding activities. Our conclusion that the boarding of horses in this case constitutes a business pursuit is further bolstered by the fact that, for every year in question, the Popps filed farm business federal income tax returns and claimed substantial annual depreciation of their property under Internal Revenue Code provisions that relate only to businesses. See *Saha* v. *Aetna Casualty & Surety Co.*, supra, 427 So. 2d 318 (concluding absence of profit does not negate existence of business pursuit where insured claimed substantial expenses and depreciation); *Heggen* v. *Mountain West Farm Bureau Mutual Ins. Co.*, supra, 220 Mont. 402 (finding deduction of expenses showed profit motive notwithstanding lack of actual profit). Accordingly, we conclude that, the trial court was correct in its determination that under the facts of this case, the boarding of horses constituted a business pursuit excluded from coverage under the Aetna policy.

The judgment is affirmed.

In this opinion the other justices concurred.