[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The present action was commenced as a petition for appointment of the state insurance commission as rehabilitator for First Connecticut Life Insurance Company (First Connecticut) pursuant to the Insurers Rehabilitation and Liquidation Act, General Statutes §§ 38a-903
through 38a-961. The named plaintiff is George M. Reider, Jr., Insurance Commissioner of the State of Connecticut.[1] The named defendant is First Connecticut.
First Connecticut is a life insurance company with its principal place of business in Torrington, Connecticut. First Connecticut is a subsidiary of Capital Benefit Plans, Inc. (Capital Benefit). Capital Benefit is owned by Robert Chain and Helen Chain. The operations of First Connecticut were intertwined with those of Capital Benefit to the extent that Capital Benefit provided all of the operating support for First Connecticut, including all equipment, office space and banking and billing services.
Pursuant to General Statutes § 38a-914, the plaintiff instituted the petition for appointment as rehabilitator on April 10, 1996, alleging that First Connecticut was in such a condition that further transaction of business in the state would be financially hazardous to its policyholders, creditors and the public. An ex parte stipulated order of rehabilitation was entered on April 2, 1996. On May 22, 1996, an order of liquidation was entered by Judge Berger. On June 14, 1996, the plaintiff and several other creditors commenced involuntary bankruptcy proceedings against Capital Benefit.
The plaintiff then commenced three separate actions against Robert Chain individually.[2] On November 5, 1997, Robert Chain filed a Chapter 7 bankruptcy petition. Pursuant to the Bankruptcy Code,11 U.S.C. § 362, the filing of the Chapter 7 petition stayed all lawsuits against Robert Chain.[3] The plaintiff commenced an adversary proceeding against Robert Chain within the bankruptcy case seeking a denial of Robert Chain's discharge in the bankruptcy case and seeking to establish the non-dischargeability of certain debts. A second adversary proceeding was commenced by the plaintiff against both Robert Chain and the bankruptcy trustee seeking to recover a portion of Robert Chain's individual retirement account.
After lengthy negotiations, two settlement agreements were reached by the plaintiff, Robert Chain and the bankruptcy trustee. The Chain Settlement provided that Robert Chain would deliver checks to the CT Page 8493 plaintiff and to payees designated by the plaintiff in an aggregate amount equal to or less than $325,000.[4] In exchange, Robert Chain would receive a release of liability for the following: any and all liabilities that Robert Chain may owe to First Connecticut, the plaintiff and First Connecticut's estate arising out of or related to transactions, events or occurrences prior to the date of the settlement including any judgment; all claims by the plaintiff against Robert Chain's assets, including his individual retirement accounts; and all claims by the Connecticut Life and Health Insurance Guaranty Association against Robert Chain and his assets, including his individual retirement accounts. The Chain Settlement further provided that funds represented by checks that were not negotiated within 120 days of the date issued shall be delivered to the plaintiff upon demand and shall become property of First Connecticut's liquidation estate available for distribution to creditors.
The second settlement agreement, the Trustee Settlement, provided that the plaintiff would receive an allowed claim of two million dollars in Robert Chains's personal bankruptcy case and would also receive a payment in the amount of $330,000. The plaintiffs objection to Robert Chain's discharge is still pending before the bankruptcy court. The two settlement agreements between Robert Chain, the plaintiff and the bankruptcy trustee were approved by the United States Bankruptcy Court on April 16, 2000, and by this court on April 19, 2000.
The plaintiff filed an amended third motion for allowance of late claims; see General Statutes § 38a-937(b); on February 23, 2001, seeking an order from this court allowing certain claims to be paid out of the remaining proceeds of the Chain Settlement on a pro rata basis. The plaintiff alleges that the claims at issue are those of small agents who sold policies of First Connecticut during the last two or three months before First Connecticut went into liquidation proceedings but who did not file proof of claims in the liquidation proceeding. The plaintiff alleges that there are unused proceeds from the Chain Settlement in the amount of $144,626.23 and that the claims of the small agents equal $200,824.30. Robert Chain filed an objection to the amended third motion for allowance of claims dated May 1, 2001.
A hearing on the plaintiff's amended third motion for allowance of claims was held before this court on May 15, 2001. The parties presented to the court a stipulation between the plaintiff and Robert Chain, in which it is stipulated that Robert Chain does not dispute that the claims set forth in the exhibits are properly allowable but does dispute that the claims may be paid out of the Chain Settlement proceeds. The parties agreed to further bifurcate the issue before the court. At this time, the sole issue for this court to decide is whether the Chain Settlement is CT Page 8494 clear and unambiguous with regard to the plaintiff paying out sums of the remainder of the $325,000 to satisfy the claims of the small First Connecticut agents or whether the plaintiff must remit the balance to Robert Chain.
"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) Tallmadge Bros., Inc. v. Iroquiois Gas Transmission SystemL.P., 252 Conn. 479, 498, 746 A.2d 1277 (2000). "Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) Pacific Indemnity Ins.Co. v. Aetna Casualy Surety Co., 240 Conn. 26, 30, 688 A.2d 319
(1997).
"Where there is no ambiguity [in the language of a contract] . . . there is no occasion for construction [to determine intent] and the agreement will be enforced as its terms direct. . . . Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." (Citation omitted; internal quotation marks omitted.) Paul Revere Life Ins. Co. v.Pastena, 52 Conn. App. 318, 322, 725 A.2d 996 (1999). "When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . On the other hand, [w]hen an ambiguous term is at issue, the trial court can examine the extrinsic evidence to resolve the question of the parties' intent." (Citation omitted; internal quotation marks omitted.) Rund v. Melillo,63 Conn. App. 216, 220, ___ A.2d ___ (2001).
The plaintiff argues that the Chain Settlement agreement is clear and unambiguous and provides that the plaintiff may expend all of the $325,000 to any payees that it designates. Robert Chain argues that the Chain Settlement is clear and unambiguous but contends that the agreement does not entitle the plaintiff to expend the full $325,000. To the contrary, Robert Chain argues that the plaintiff must remit the remaining CT Page 8495 $144,626.23 to him, rather than pay the claims of the former small agents of First Connecticut.
Paragraph 2 of the Chain Settlement provides: "On the Closing Date, Chain shall deliver to the Liquidator checks in amounts and to the payees designated by the Liquidator, in writing, in an aggregate amount equal to or less than $325,000. The checks shall be drawn on an account which shall at all times contain available funds equal to or in excess of the amount of the outstanding checks. Funds represented by checks which have not been negotiated within 120 days of the date issued shall be delivered to the Liquidator upon his demand and shall become property of the estate available for distribution to creditors. Chain shall also deliver a release of any and all liabilities of First Connecticut, the Liquidator, First Connecticut's estate and Connecticut Life and Health Insurance Guaranty Association."
A payee is defined as "[t]he entity to whom a cash payment is made or who will receive the stated amount of money on a check. One to whom money is paid or is to be paid." Black's Law Dictionary (5th Ed. 1990). The first sentence in paragraph two of the Chain Settlement gives the plaintiff broad discretion to determine who is eligible to receive payment from the $325,000. The third sentence authorizes distribution of any unnegotiated checks to creditors of the liquidation estate. A creditor is "a person to whom a debt is owing by another person who is the debtor." Black's Law Dictionary (5th Ed. 1990). According to the third sentence, any check that has not been negotiated to a payee must be returned to the plaintiff for distribution to Robert Chain's creditors. The term payee is broader than the term creditor.
Robert Chain focuses on the phrase "equal to or less than $325,000" and whether this phrase means that the plaintiff is entitled to all of the $325,000 or to some amount less than $325,000. The common and natural meaning of "equal to or less than $325,000" means any amount up to and including $325,000. The phrase "equal to or less" than is boilerplate commonly used in these types of agreements. It seems highly unlikely that the plaintiff intended to return money to Robert Chain instead of paying the remainder of those proceeds to creditors such as the Guaranty Association, a creditor of First Connecticut who is owed eighteen million dollars.
Because the phrase "equal to or less than" has a "definite and precise meaning about which there is no reasonable basis for a difference of opinion," the contract language is unambiguous. Paul Revere Life Ins. Co.v. Pastena, supra, 52 Conn. App. 322. According to Tallmadge Bros., Inc.v. Iroquiois Gas Transmission System L.P., supra, 252 Conn. 498, the "court will not torture words to import ambiguity where the ordinary CT Page 8496 meaning leaves no room for ambiguity. . . ." (Internal quotation marks omitted.) Paragraph 2 of the Settlement Agreement is clear and unambiguous and by its terms provides that the plaintiff in entitled to expend the entire $325,000 to the payees that it designates. Robert Chain is not entitled to receive any of the remaining $141,626.23.
So ordered,
John J. Langenbach Superior Court Judge