[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff Patricia Grechika, brought this action against the defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), alleging that Liberty Mutual owes a duty to defend and indemnify her in another civil action, Greater Watertown Federal Credit Union v.Grechika, Superior Court, judicial district of Waterbury, Docket No. 147680 ("the underlying action"). Grechika's allegations against Liberty Mutual arise pursuant to a homeowner's insurance policy, policy no. H32-212-251794-119 3, which Liberty Mutual issued to Grechika on May 28, 1997, that was effective from September 1, 1996 through September 1, 1997, and provided personal liability insurance of $300,000 for the negligent acts of the plaintiff ("the policy").
By complaint dated August 18, 1998, Greater Watertown Federal Credit Union ("Credit Union") and Cumis Insurance Society, Inc. ("Cumis") brought the underlying action against Grechika, who was employed as a teller at the Greater Watertown Credit Union.
Counts two and four of the underlying action are the basis of this motion.[1] The second count of the underlying action alleges theft of records. Specifically, it alleges that, after the plaintiff quit her employment with Greater Watertown Federal Credit Union, it was discovered that records of the Credit Union were missing and that several irregularities were found regarding Grechika's family members' VISA accounts. The fourth count of the underlying amended complaint alleges that $14,500 in cash was missing "due to the negligence and other acts" of Grechika.
On June 6, 2000, the plaintiff filed a one count complaint against the defendant for its neglect, failure and refusal to indemnify or defend the plaintiff for the claims which the Greater Watertown Federal Credit Union and Cumis have asserted against her in the underlying action. The CT Page 8932 plaintiff alleges that the liability coverage provided by the policy applies to the pending claims in counts two and four of the underlying action. Therefore, the plaintiff requests the following relief: (1) that the policy provide liability coverage to Grechika in the underlying action; and (2) that the defendant provide Grechika with a defense or indemnification for the claims asserted against Grechika in the underlying action.
On September 1, 2000, the defendant filed its answer and special defenses. The defendant asserts, by way of special defenses, that it does not have the duty to defend or indemnity the plaintiff for the following reasons: (1) the insurance contract does not provide coverage for the plaintiff's allegations because she has failed to allege "bodily injury," "property damage" or occurrences as defined under the language of the insurance policy (first, second, third and fourth special defenses); (2) the insurance policy does not provide coverage for the plaintiff's claims because it does not cover bodily injury or property damage "which is expected or intended by the insured" (fifth and sixth special defenses); (3) the insurance policy does not provide coverage for the plaintiff's claims because it does not cover bodily injury or property damage that arises out of, or in connection with a business (seventh and eighth special defenses); (4) the plaintiff is not entitled to coverage because she failed to give the defendant written notice of the loss as soon as was practical, as required by the insurance contract (ninth special defense); and (5) the plaintiff is not entitled to coverage because she failed to promptly forward to the defendant every notice, demand, summons or other process relating to the accident or occurrence, as required by the insurance contract (tenth special defense). On September 26, 2000, the plaintiff filed a general denial of the defendant's ten special defenses.
On November 4, 2000, the defendant filed this motion for summary judgment on the ground that it is entitled to judgment as a matter of law as to the plaintiff's single count complaint because there is no genuine issue as to any material facts. The parties filed numerous briefs in support of their arguments, as well as other documentary evidence and affidavits.[2]
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, CT Page 8933 entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). In deciding such a motion, the court's sole task is to determine whether genuine issues of material fact exist, not to resolve those issues on the merits. The existence of a genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence, and not by "[m]ere assertions of fact." Maffucciv. Royal Park Ltd. Partnership, 243 Conn. 552, 554, 707 A.2d 15 (1998).
"Issues related to the content of insurance policies are appropriate for summary judgment review." Conway v. Travelers Casualty, Superior Court, judicial district of Hartford, Docket No. 588119 (December 15, 2000, Rubinow, J.} When a policy of insurance explicitly excludes from its coverage the conduct alleged in a complaint brought against the insured, the court may properly determine on a motion for summary judgment whether the insurer has a duty to defend the insured. SeeCommunity Action for Greater Middlesex County, Inc. v. American AllianceIns. Co., 254 Conn. 387, 397, 757 A.2d 1074 (2000). "The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of . . . [the underlying] complaint with the terms of the insurance policy." Id., 395.
"[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend." (Internal quotation marks omitted.)Community Action for Greater Middlesex County, Inc. v. American AllianceIns. Co., supra, 254 Conn. 398. See also Edelman v. Pacific EmployersInsurance Co., 53 Conn. App. 54, 59, 728 Aid 531, cert denied,249 Conn. 918, 733 A.2d 229 (1999) (If the underlying complaint has alleged a mere possibility of coverage under the policy, the insurer must defend.). Thus, if the complaint "states different causes of action or theories of recovery against the insured, and one such cause is within the coverage of the policy but the others may not be within such coverage, the insurer is bound to defend with respect to those which, if proved, are CT Page 8934 within the coverage." Schurgest v. Schuman, 156 Conn. 471, 490,242 A.2d 695 (1968).
The defendant argues that it is entitled to summary judgment on the ground that there is no genuine issue of material fact and it is entitled to judgement as a matter of law because the underlying action for theft of records and the missing bag of cash is not covered by the homeowner's insurance policy.
 I. The policy requires "bodily injury" or "property damage" arising out of an "occurrence"
The threshold issue here is whether Greater Watertown Federal Credit Union has alleged facts in the underlying action that it sustained "bodily injury" or "property damage" that arose out of an occurrences as defined in the insurance policy. The defendant argues that, because the conduct alleged in the underlying action does not constitute bodily injury or property damage arising from an occurrence, as defined under the policy, it is not required to defend or indemnify the plaintiff. In response, the plaintiff argues that there is a genuine issue of material fact that the defendant has a duty to defend and/or indemnify her.
"It is the function of the court to construe the provisions of the contract of insurance." Flint v. Universal Machine Co., 238 Conn. 637,642, 679 A.2d 929 (1996). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . If the insurance coverage is defined in terms that are ambiguous, such ambiguity is, in accordance with standard rules of construction, resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted. . . . If, however, the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings. . . ." (Citations omitted; internal quotation marks omitted.) Schultz v. Hartford Fire Ins. Co.,213 Conn. 696, 702-03, 569 A.2d 1131 (1990).
According to the plaintiff's homeowner's liability insurance policy, it CT Page 8935 will "[p]ay up to our limit of liability for the damages for which the `insured' is legally liable" and "[p]rovide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent," [i]f a claim is made or a suit is brought against an `insured' for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies. (Defendant's exhibit B, p. 26). Thus, in order to trigger coverage, the bodily injury or property damage must arise from an occurrence. "Occurrence" is defined by the policy as an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, m: a. "Bodily injury"; orb. "Property damage." (Defendant's exhibit B, p. 2).
In the underlying action, the allegations include loss, destruction and tampering with computer records, microfiche records, Credit Union account information, and a bag containing $14,500 in cash. The court finds that the only allegation of the underlying action that could potentially fall within the definition of "occurrence" under the insurance contract coverage is count four, which alleges that cash was missing from the Credit Union due to the plaintiff's negligence and other acts.[3] Were the court to find such allegations to be an "accident . . . which results . . . in bodily injury or property damage" then summary judgment should be denied because the underlying action alleges facts that bring the underlying action within coverage of the policy.
As previously stated, the policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . property damage." (Defendant's exhibit B, p. 2). "Accident" is not defined in the policy. Connecticut courts have discussed the definition of "accident," defining it as "a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." Providence Washington Ins. Group v. Albarello, 784 F. Sup. 950,953 (D.Conn. 1992). "An accident is an unintended occurrence." Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 590, 573 A.2d 699
(1990). "The term `accident' is to be construed in its ordinary meaning of an `unexpected happening'. . . . The `accident' was the event causing injury, not the cause of that event." (Citations omitted.) CommercialContractors Corp. v. American Ins. Co., 152 Conn. 31, 42, 202 A.2d 498
(1964).
The court finds that all the allegations in the underlying action, except those found in count four, do not fall within this definition of an occurrence because they are not accidental. The allegations within count four, however, state that the cash was missing "due to the CT Page 8936 negligence and other acts of" Grechika. Construing the terms of the policy in a manner most favorable to the insured, this chain of events may be considered an occurrence within the terms of the insurance policy. The court must examine next whether any of the exclusion provisions of the homeowner's insurance contract apply.
II. Policy Exclusions
The defendant argues that it does not have to defend or indemnify the plaintiff on the underlying action because the conduct alleged is excluded from coverage under the terms of the insurance contract. Specifically, the defendant argues that the insurance contract does not cover the plaintiff's claims because it excludes from coverage the following claims: (1) claims arising out of employment; (2) claims arising from intentional conduct; (3) liability derived from contracts.
Where an insurer sets up a special exclusion for the purpose of withdrawing from the coverage a specific liability it was unwilling to provide indemnity for, "[t]he burden of proving an exception to a risk is on the insurer." O'Brien v. John Hancock Mutual Life Ins. Co.,143 Conn. 25, 29, 119 A.2d 329 (1955). Specifically, "the insurer has the burden of demonstrating that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations in toto, are subject to no other interpretation." (Emphasis in the original.) R.E.O., Inc. v. The Travelers Companies, Superior Court, judicial district of New Haven at New Haven, Docket No. 372522 (May 20, 1998, Silbert, J.), citing, New York v. Amro Realty Corp.,936 F.2d 1420, 1427 (2d Cir. 1991). If there is any ambiguity in the clause in question the construction most favorable to the insured will be adopted. Schultz v. Hartford Fire Ins. Co., supra, 213 Conn. 702.
A. Intentional Conduct
The insurance contract states that it does "not insure for loss created directly or indirectly by [i]ntentional loss, meaning any loss arising out of any act committed: (1) By or at the direction of an insured; and (2) [w]ith the intent to cause a loss." (Defendant's exhibit B, p. 19.) In addition, the policy states that it does `not apply to . . . property damage' [w]hich is expected or intended by the "insured." (Defendant's exhibit B, p. 27.) The underlying complaint alleges primarily intentional conduct as that term is defined in the policy, on the part of Grechika. (Defendant's exhibit A, count two, ¶ 4; count four, ¶ 6.) As to these counts, it is found that the insurance contract does not provide coverage. It is further found, however, that in count four of the underlying action, the Credit Union alleges that the bag of cash was missing "due to the negligence and other acts of" Grechika. (Defendant's CT Page 8937 exhibit A, count four, ¶ 8.) The court finds that an issue of fact exists as to whether the plaintiff's actions with regard to the bag of missing money was intentional or negligent. However, this fact is not material because, despite this factual determination, the allegations in the underlying action are not within coverage of the policy because of the business exclusion.
B. Business exclusion
The court must now address whether the allegations in count four of the underlying action are excluded from coverage under the policy. The plaintiff argues that the business exclusion does not apply to count four because the allegations specifically refer to the actions of others as the cause of the loss and the plaintiff's employment duties did not include supervising. In addition, the plaintiff argues that the business pursuit exclusion does not apply to acts arising out of employment. The plaintiff relies on Krevolin v. Dimmick, 39 Conn. Sup. 44, 467 A.2d 948
(1983), and Firestime v. Poverman, 388 F. Sup. 948 (D.Conn. 1975), for support of her arguments. The defendant argues that business exclusion applies because the conduct of the plaintiff alleged in the underlying action occurred while the plaintiff was performing her job duties as either a teller or account manager. The defendant relies on PacificIndemnity Ins. Co. v. Aetna Casualty Surety Co., 240 Conn. 26 (1997), for support of its argument.
In Section II Exclusions to Section II Liability Coverages under the Policy, it states that the liability coverages do "not apply to bodily injury or property damage . . . [a]rising out of or in connection with a business engaged in by an" insured. `This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business."' (Defendant's exhibit B, p. 27.) "Business" is defined by the policy as "trade, profession or corporation." (Defendant's exhibit B, p. 1.)
In Pacific Indemnity Insurance Co. v. Aetna Casualty and Surety Co., supra, 240 Conn. 30, the Connecticut Supreme Court "addressed the construction of insurance policies with respect to the definition of business pursuits" for the first time. The court adopted New York's view that "the term business pursuits encompassed two elements, continuity and profit motive. As to the first, there must be a customary engagement or a stated occupation; as to the latter, there must be shown to be such activity as a means of livelihood; gainful employment; means of earning a living; procuring subsistence or profit; commercial transactions or engagements. . . . [F]or purposes of the business pursuits exclusion, the business engaged in by [the insured, need not necessarily be limited to CT Page 8938 his sole occupation or employment." (Citations omitted; emphasis in original; internal quotation marks omitted.). Id., 30-31.[4] "Profit motive, not actual profit, makes a pursuit a business pursuit." Id., 3.4. In addition, the court noted that "[t]he determination of whether a particular activity constitutes a business pursuit is to be made by a flexible fact-specific inquiry." Id., 33. The court finds that PacificIndemnity Insurance Co. v. Aetna Casualty Surety Co., supra,240 Conn. 26, is the more compelling authority, and notFirestime v. Poverman, supra, 388 F. Sup. 948, and Krevolin v. Dimmick, supra, 39 Conn. Sup. 44, as cited by the plaintiff See Conway v.Travelers Casualty, Superior Court, judicial district of Hartford, Docket No. 588119 (December 15, 2000, Rubinow, J.) (finding that Krevolin v.Dimmick, supra, 39 Conn. Sup. 44, and Firestime v. Poverman, supra,388 F. Sup. 948, "must be read in the context . . . of the decision inPacific Indemnity Ins. Co. v. Aetna Casualty Surety Co.," supra,240 Conn. 26, because Pacific Indemnity Ins. Co. v. Aetna Casualty Surety Co., is "the superseding and applicable authority of the Connecticut Supreme Court.")
In Arbella Mutual Insurance Company v. Gloth, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 569145 (April 2, 1998, Wagner, J.), the court examined the business exclusion provision of the policy that excluded from coverage "all claims arising out of or in connection with a business engaged in by an insured." This language is identical to the language in the current policy. In Arbella MutualInsurance Company v. Gloth, supra, Superior Court, Docket No. 569145, the insurance company sought a declaratory judgment that it had no obligation to indemnify or defend the defendant insured under a homeowner's policy in an underlying action. The underlying action was brought by Jeaninne Atkins against Gloth based on the claim that Gloth owned various apartment buildings and hired Atkins as a rental agent and property manager. Atkins alleged that Gloth "instructed her not to rent apartments to families with children, and when she argued with him over this policy, he used verbal abuse and intimidation to force her to carry out this no children policy, subjected her to certain listed intolerable working conditions and fired her . . . allegedly for lack of work." (Internal quotation marks omitted.) Id. The underlying complaint alleged a violation of § 42 U.S.C. § 3617, intentional infliction of emotional distress and negligent infliction of emotional distress. The insurance company moved for summary judgment in the declaratory judgment action on the grounds, inter alia, that the policy specifically excludes from coverage "all claims arising out of or in connection with a business engaged in by an insured." Id. The court held that "[b]ecause of the business exclusion provision, the homeowners policy does not require Arbella [the insurance company] to cover claims of damage sustained by Gloth in the Atkins suit, or to defend him in that suit." The court noted CT Page 8939 that "Couch on Insurance 3d, West 1997 [§ 128.14, p. 128-301 observes that in analyzing whether any specific activity is business related, a key question is could the claimed injury have been sustained even if the business was not involved? If so the case will generally fall outside the exclusion. . . . Using this criteria, it is clear that all the torts alleged to be committed by Gloth could not have taken place except in the involvement of his real estate business." Id.
In the present case the plaintiff's conduct, as alleged in the underlying action, occurred while the plaintiff was employed at the Credit Union and performing her job functions as teller and accounts manager. It is undisputed that Grechika was employed by the Credit Union as a VISA coordinator and teller. (Plaintiff's exhibit B; Defendant's exhibit C, p. 13.) As a teller, she worked the window and was responsible for waiting on customers, accepting payments, cashing checks, taking deposits, making money orders, and preparing traveler's checks. (Defendant's exhibit C, p. 13.). It is undisputed that as a Visa coordinator, she was responsible for "taking applications, performing credit checks, approving or denying applications and blocking lost or stolen Visa credit cards." (Plaintiff's exhibit B, count 1, ¶ 4.) The claimed injuries in the underlying action could not have been sustained even if the business was not involved. See Arbella Mutual Insurance Co.v. Gloth, supra, Superior Court, Docket No. 569145. Therefore, the court finds that the alleged conduct in the underlying action, even if not clearly intentional, occurred "out of or in connection with a `business' engaged in by" the plaintiff Accordingly, pursuant to the clear and unambiguous terms of the insurance contract, coverage for the "occurrence" alleged in the underlying action is excluded.
C. Requirements/procedures
Finally, the defendant argues that the plaintiff is not entitled to coverage because she failed to follow the procedures for recovery as set forth in the policy. Because the court finds that the occurrence alleged in the underlying action, for which the plaintiff seeks defense and indemnification from the defendant in this action, is excluded from coverage under the policy, whether the plaintiff failed to follow procedures for recovery is a nonissue and will not be addressed as part of this opinion.
For the foregoing reasons, the court finds that the policy excludes coverage for the "occurrence" that forms the basis of the plaintiff's claims in her suit against the defendant, Liberty Mutual. Accordingly, Liberty Mutual's motion for summary judgment is granted because the court finds that there are no genuine issues of material fact that the policy excludes coverage and that, consequently, Liberty Mutual is entitled to CT Page 8940 judgment as a matter of law.
By the Court,
 ________________________ JOSEPH W. DOHERTY, JUDGE