[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT #109
 FACTS
On June 14, 2000, the plaintiff, James Quarto filed a single count complaint against the defendant, New London County Insurance alleging wrongful refusal to defend and indemnify him pursuant to the terms of his homeowners insurance policy, for claims brought against him in another civil action initiated by the estate of Darcie C. Hutchinson. SeeHutchinson v. Milefski, Superior Court, judicial district of New London at New London, Docket Number 540009.
The complaint alleges the following facts. On or about October 7, 1995 the defendant, issued a homeowners insurance policy to the plaintiff, CT Page 5550 wherein the defendant agreed to pay all sums which the insured may become legally obligated to pay as damages for bodily injury or property damage caused by an occurrence to which coverage applied. The complaint further alleges that on September 13, 1996, while the homeowners insurance policy was in effect, the plaintiff entered the Brown Derby Lounge (Lounge), and served an alcoholic beverage to a patron. This patron subsequently left the Lounge and while driving his pick up truck, caused a collision with a vehicle driven by Darcie C. Hutchinson. As a result of this collision, Darcie C. Hutchinson suffered injury resulting in her death. Subsequently, Marie J. Hutchinson, administratrix of the estate of Darcie C. Hutchinson, brought a wrongful death action against the plaintiff. The plaintiff notified the defendant of the initiation of suit against him, and requested that it defend and indemnify him pursuant to the terms of his homeowners policy. The defendant, however, refused to defend the plaintiff in the action or to assume any responsibility therefor. On December 4, 2000, the defendant filed its answer and special defense. The defendant asserts, by way of special defense, that it does not have a duty to defend or indemnify the plaintiff because the bodily injury at issue arose out of or in connection with the plaintiffs business.
On December 18, 2001, the defendant filed a motion for summary judgment on the ground that it is entitled to judgment as a matter of law because there is no genuine issue of material fact. The defendant filed a memorandum of law in support, attaching numerous exhibits. On January 11, 2002, the plaintiff filed a memorandum of law in opposition to the defendant's motion for summary judgment. On January 22, 2002, the defendant filed a supplemental memorandum of law in support of the motion for summary judgment.
 DISCUSSION
Practice Book § 17-44 provides that "[i]n any action . . . any party may move for a summary judgment at any time, except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial." "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like" Practice Book § 17-45. "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." CT Page 5551Citicorp Mortgage, Inc. v. Porto, 41 Conn. App. 598, 601, 677 A.2d 10
(1996). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries,Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527, 550, ___ A.2d ___ (2002). The granting of summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
"`Issues related to the content of insurance policies are appropriate for summary review.' Conway v. Travelers Casualty, Superior Court, judicial district of Hartford, Docket No. 588119 (December 15, 2000,Rubinow, J.). When a policy of insurance explicitly excludes from its coverage the conduct alleged in a complaint brought against the insured, the court may properly determine on a motion for summary judgment whether the insurer has a duty to defend the insured. See Community Action forGreater Middlesex County, Inc. v. American Alliance Ins. Co.,254 Conn. 387, 397, 757 A.2d 1074 (2000).'" Grechika v. Liberty MutualFire Ins. Co., Superior Court, judicial district of Waterbury, Docket No. 159540 (July 5, 2001, Doherty, J.).
In its motion for summary judgment, the defendant argues that the plaintiffs homeowners insurance policy contains clear and unambiguous language exempting from coverage, any personal liability arising out of or in connection with a business engaged in by an insured. The plaintiff argues that the language of the business exclusion provision is ambiguous because reasonable persons could differ as to its meaning.
Section II of the plaintiffs homeowners insurance policy provides in relevant part that Liability coverages "do not apply to bodily injury or property damage . . . [a]rising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business." (Defendant's exhibit A) The policy further defines the term business to include "trade, profession or occupation." (Defendant's exhibit A).
Contrary to the plaintiffs assertion that his subjective interpretation is relevant to the meaning of the business exclusion provision, the Supreme Court has stated: "Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question . . . construction of a contract of insurance presents a CT Page 5552 question of law for the court. . . ." (Citations omitted; internal quotation marks omitted.) Flint v. Universal machine Co., 238 Conn. 637,642, 679 A.2d 929 (1996). In Pacific Indemnity, the Connecticut Supreme adopted the majority view "that the term business pursuits encompassed two elements, continuity and profit motive. As to the first, there must be a customary engagement or a stated occupation; as to the later, there must be shown to be such activity as a means of livelihood; gainful employment; means of earning a living; procuring subsistence or profit; commercial transactions or engagements." (Citation omitted; internal quotation marks omitted.) Pacific Indemnity Ins. Co. v. Aetna Casualty Surety Co., 240 Conn. 26, 30, 688 A.2d 319 (1997). "Profit motive, not actual profit, makes a pursuit a business pursuit." (Internal quotation marks omitted.) Id., 34. In addition, the court noted that "[t]he determination of whether a particular activity constitutes a business pursuit is to be made by a flexible fact-specific inquiry." Id., 33.
In Grechika v. Liberty Mutual Fire Ins. Co., supra, Docket No. 159540, the court addressed the same business exclusion language that is at issue here, and concluded that it was clear and unambiguous. The court inGrechika looked to the Supreme Court's holding in Pacific Indemnity to define business pursuits. See Pacific Indemnity Ins. Co. v. AetnaCasualty Surety Co., supra, 240 Conn. 26.
This court agrees with the reasoning in Grechika, and finds the Supreme Court's analysis in Pacific Indemnity to be controlling. Accordingly, the court must next apply the Pacific Indemnity standard to determine whether the specific activity at issue here arises out of or in connection with a business engaged in by the insured. In light of this standard set forth above, the court will next determine whether the plaintiffs conduct was continuous and motivated by profit.
The defendant argues that the plaintiffs activities at the Lounge constitute business within the meaning of the exclusion of the plaintiffs homeowners policy because the plaintiff was involved with the Lounge on a continuous basis, and in doing so, was motivated by profit. The plaintiff argues that the elements enumerated in Pacific Indemnity are not satisfied, because the plaintiffs involvement with the Lounge was not continuous in nature, nor was the plaintiff motivated by profit.
The defendant submits numerous exhibits in support of its motion, including a transcript of the plaintiffs deposition testimony. In his deposition testimony, the plaintiff states the following. The plaintiff purchased the Lounge in 1973. He maintained an ownership interest in the Lounge from 1973 through 1999, but decreased his involvement with the Lounge between roughly 1990 and 1999, when he got out of the business. In September of 1996, the plaintiff indicates that he served as secretary CT Page 5553 and treasurer of the Lounge. On September 13, 1996, the night of the fatality, the plaintiff went to the Lounge as business owner. The plaintiff helped out behind the bar by washing glasses, putting trash out, serving food and beers. The plaintiff received weekly pay checks from the Lounge at regularly scheduled times, and helped out at the Lounge with the purpose of generating a profit.
In addition to submitting the plaintiffs deposition testimony, the defendant submits the Lounge's tax returns in support of its motion. The tax returns indicate that from 1995 through 1997, the plaintiff maintained an ownership interest in the Lounge, from which he derived income.
The plaintiff, in support of his motion, submits a single affidavit into evidence. In the affidavit, the plaintiff indicates that in 1996 his duties at the Lounge consisted of property management and bookkeeping. Further, in the affidavit, the plaintiff indicates that on September 13, 1996, he served beer to customers at the Lounge. There is nothing in the affidavit to contradict the fact that the plaintiff maintained a continuous ownership interest in the Lounge from 1973 to 1999, nor is there anything to contradict the fact that the plaintiff earned income from the Lounge during this time.
This court finds that there is no genuine issue of material fact as to whether the plaintiff was continuously involved with the Lounge. The uncontradicted evidence demonstrates that from 1973 to 1999, the plaintiff maintained a continuous and uninterrupted ownership interest in the Lounge. Therefore, the continuity element of the business pursuit test enumerated in Pacific Indemnity is established.
This court further finds that there is no genuine issue of material fact that, in working at the Lounge, the plaintiff was motivated by profit. The uncontradicted evidence demonstrates that the plaintiff derived regular income from the Lounge. Further, in his own deposition testimony, the plaintiff indicates that in assisting the Lounge, he was motivated by profit. The profit element of the business pursuit test enumerated in Pacific Indemnity is established.
The plaintiff argues that profit motive is not necessarily established by the fact that he received compensation from the Lounge. In support of this position, the plaintiff cites to Camden Fire Ins. Ass'n. v.Johnson, 170 W. Va. 313, 294 S.E.2d 116 (1982). In Camden Fire, the court recognized that "one may regularly engage in a particular activity for which he or she receives compensation without being motivated by the prospect of profit." Id., 120. The court made this observation, however, in the context of a grandmother receiving compensation for caring for her CT Page 5554 grandchild. The court held that "an individual who cares for children in his or her home as a neighborly or kindred accommodation to a friend or relative is not engaged in business pursuits within the meaning of an exclusionary clause in an insurance policy." In Camden Fire, the grandmother was not a licensed day care provider, nor did she advertise childcare services to the general public. Id. Unlike the plaintiff inCamden Fire, the plaintiff in this case was the co-owner of a licensed business for which he receives regular compensation.
The plaintiff next argues that in serving alcohol at the Lounge on the night of the fatality, he was not motivated by profit, but was motived by desire to help out at the Lounge because they were short staffed. In support of his position that a desire to help is not commensurate with a profit motive, the plaintiff cites to Farmers and Merchants Ins. Co. v.Harris, 814 S.W.2d 332 (Mo.App. 1991). In Farmers and Merchants, the court held that the defendant's activity of cleaning guns, on display in a friend's gun shop, was not a business pursuit because the defendant was simply providing a favor. Id. Unlike the plaintiff in the present action, in Farmers and Merchants, the defendant did not maintain an ownership interest in the business, nor did he receive any regular compensation from his friend's business.
Alternatively, the plaintiff argues that in 1995, the time the policy was issued, the plaintiffs primary business did not involve the Lounge. Rather, the plaintiff argues that his primary business consisted of making real estate investments. Therefore, the plaintiff argues that his activities at the lounge are not within the policy's business exclusion provision. "[F]or purposes of the business pursuits exclusion, [however], the business engaged in by the insured, need not necessarily be limited to his sole occupation or employment." (Citations omitted; emphasis in original; internal quotation marks omitted.). Pacific Indemnity Ins. Co.v. Aetna Casualty Surety Co., supra, 240 Conn. 30-31. In PacificIndemnity for example, the insured boarded horses, but not as a sole means of livelihood. Id., 34. Nevertheless, the court determined that the boarding activity constituted a business pursuit. Id. Similarly, this court finds that the plaintiff was engaged in a business pursuit, when serving alcohol to patrons at the Lounge, and helping out as needed, even thought the Lounge did not provide the plaintiffs sole means of livelihood.
 CONCLUSION
This court finds that there is no issue of material fact that the plaintiff was engaged in business at the Lounge on the night of the fatality. Therefore, this court finds that the business pursuits exclusion contained in the defendant's policy precludes the defendant's CT Page 5555 obligation to defend or indemnify the plaintiff in the underlying action. The defendant's motion for summary judgment is granted.
 ___________________ D. Michael Hurley, Judge Trial Referee